## STATE ex rel. ROBERT L. BRENNAN, Appellant, v. JOHN H. DIERKER et al., Respondents.

### St. Louis Court of Appeals, April 14, 1903.

1. **Sheriff as a Peace Officer:** MISDEMEANOR: POWER TO ARREST FOR. Peace officers, in the absence of an empowering statute, have no authority to arrest an individual for a misdemeanor without process except on view.

2. ———: ARREST: BONDSMEN OF SHERIFF, LIABLE WHEN. Only illegal acts done by a sheriff, under color of his office, will render the bondsmen liable, if the illegality consists in an abuse of authority, instead of an outright usurpation thereof.

3. ———: ———: BONDSMEN OF SHERIFF NOT LIABLE, WHEN. Sureties on a sheriff's bond, conditioned if he shall faithfully discharge the duties of his office as sheriff, are not liable for an arrest by him, without a warrant for a misdemeanor not committed in his view, as such arrest was not under color of office, although he was acting as sheriff at the time, while he would be personally liable for misconduct.

Appeal from Montgomery Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

AFFIRMED.

STATEMENT OF FACTS.

This is an action on the official bond of the respondent, Dierker, as sheriff of St. Charles county, to recover damages from him and his sureties for an alleged malicious arrest of the appellant in said county on November 10, 1901. Appellant was arrested for hunting on Sunday and for attempting to carry eight quail out of the county, which he was charged with having killed therein.

The petition, after making formal averments in regard to the election of Dierker as sheriff and the execution of his bond for $15,000 with the other respondents as sureties thereon, proceeds as follows:

"Plaintiff says that at the times hereinafter mentioned he was, and had been for many years, a resident of the city of St. Louis, Missouri, and enjoyed and possessed a good name and fame among the citizens of said city. That on the 10th day of November, 1901, the defendant John H. Dierker, under color and pretense of his authority as sheriff of said county of St. Charles, in a violent and threatening manner and without warrant, at the said county of St. Charles, arrested plaintiff and detained him at a station called Seeburger, on the Burlington railroad, and restrained plaintiff of his liberty, and refused to permit plaintiff to board the car coming to St. Louis, saying to plaintiff that he (plaintiff) would have to walk on his (John H. Dierker's) dead body before plaintiff should board the car.

"That said John H. Dierker falsely charged plaintiff with attempting to transport and ship eight quail, which the said John Dierker falsely charged plaintiff with killing in said county of St. Charles, to the city of St. Louis; and said John H. Dierker did also then falsely and maliciously charge plaintiff with unlawfully hunting game on Sunday, and then and there demanded of plaintiff the sum of $25, as security for plaintiff's appearance before a justice of the peace at said town of

St. Charles. That plaintiff refused to pay or deposit with said John H. Dierker any sum of money; that said Dierker then, in foul and profane language, threatened to transport plaintiff to the town of St. Charles, which said town was some ten or more miles distant.

"Plaintiff says that said false arrest was made in the night-time; that the weather was cold and raw, and that he was not clad in garments sufficient to protect him from the cold raw atmosphere during a ride in a wagon to St. Charles.

"Plaintiff also states that he was then and is now engaged in St. Louis; and was required to be at his place of employment on the morning of the 11th of November, 1901; that defendant John H. Dierker then, by force and violence, seized a gun belonging to plaintiff, and told plaintiff he would hold said gun as security for plaintiff's appearance before a justice of the peace in said town of St. Charles. Plaintiff says that being intimidated by the violent threats of defendant Dierker, and being unwilling to undergo the exposure of a ride in a wagon to St. Charles, he yielded to defendant Dierker's unlawful seizure of said gun.

"Plaintiff says he was put to great expense by said false arrest in the payment of attorney's fees and traveling expenses.

"That said false arrest was published in the daily papers of St. Louis and the report of same was read by many people, to his shame and mortification.

"Plaintiff says that he has been actually damaged, by reason of said false arrest in the sum of five hundred dollars; and plaintiff says that, by reason of the unlawful arrest and the violent and threatening manner thereof, he prays punitive or exemplary damages in the sum of fifteen hundred dollars."

The answer was a general denial.

At the conclusion of the testimony for appellant the court gave an instruction in the nature of a demurrer to his case; he took a voluntary nonsuit with leave to

move to have it set aside, and having moved ineffectually, prosecuted an appeal to this court.

As presented by the record the facts are, that appellant R. L. Brennan and H. C. Tully, who are residents of the city of St. Louis, went to St. Charles county on Sunday, November 10, 1901, with a hunting outfit, stopped a while at the house of an acquaintance by the name of Kline, then took a skiff and rowed about on the Mississippi river, finally landing at a small island or "towhead" which appellant insists was on the Illinois side of the river. They stayed on the island until late in the afternoon, but killed no game nor, it seems, even fired a shot until about the time they were leaving, when Brennan discharged his gun into the air. Seeburger is a station in St. Charles county where appellant and his companion expected to catch a train for St. Louis, and as they approached the station they were told by a man named Obershaw, who dwelt thereabouts, that the sheriff was at the station waiting for them. When they got to the station Dierker, who had no warrant for Brennan or Tully, accosted them and what transpired was thus stated by Brennan in his testimony:

"I was the first one to step on the platform; they had but one step off the track, and Mr. Dierker stepped up and said, 'Good evening;' and we said 'Good evening' to him; he said, 'Have you been hunting?' And as I was somewhat disgusted with the day, I says, 'I would be ashamed to disgrace the term by saying I have been hunting to-day;' he says, 'Well I am sheriff of this county and you can consider yourself under arrest;' I says, 'Let's see your authority;' he says, 'By God, I don't have to show you my authority;' he says, 'I am sheriff and that's all there is to it.' Just then Mr. Tully stepped up on the platform with a cape on—it was kind of damp, and he grabbed the cape and says, 'Here, you have been hunting;' he says, 'Not in the State of Missouri;' he says, 'If you tell me that I will take you down whether you are hunting or not;' he at that time

grabbed Tully by the collar, at the same time making an effort to get his revolver; I stepped up and caught him by the shoulder and says; 'You may be the sheriff all right, we don't know that; you refused to show your authority and we don't propose to be outraged;' he says, 'By God, I am sheriff,' and he says, 'that's all there is to it;' he says, 'If you doubt my word go over to old Bill Studer's house and I will show you;' Mr. Tully says, 'You should have your credentials on to show it;' he says, 'Have you a warrant for our arrest?' he says, 'By God, I don't need a warrant; I am sheriff and that's all;' at that time Mr. Jones and Mr. Wright stepped up and he placed them under arrest; he says, 'I want to tell you one thing,' he says, 'I am sheriff of this county and I intend to take you to St. Charles and if any of you make an attempt to get on this train and dodge me,' he says, 'By God, I will die in my tracks but what I take you, and if you succeed in dodging me I will take the engineer and fireman off the train but what I take you,' all the time flashing his hand in his pocket; I told him I thought a little reasoning would be well there, that we were no criminals, we hadn't violated any law, but if he would convince us he was sheriff we would take off our hats to him; just then Mr. Obershaw came up and heard the conversation, and he identified him as sheriff, and then he says, 'You will either give me twenty-five dollars in cash or your guns, or, By God, you will take a trip to St. Charles with me in a wagon;' neither one of us felt like putting up twenty-five dollars, in fact some of us couldn't if we had wanted to; he says, 'There's no chance for an argument, you will either give me twenty-five dollars or the guns;' we still protested about giving him the guns, but finally after Mr. Obershaw identified him, we told him we would submit to him as sheriff and take his receipt for the guns he demanded; we then gave him the guns under protest and took his receipt for the guns; then the train came along and we took the train for St. Louis.''

The next day Brennan went back to St. Charles, he says to redeem his gun and not to stand trial or plead guilty to any charge that might have been instituted against him, as he was notified that such case would come up on the 13th instant. He expected to deposit $25 and obtain possession of his gun, which was an expensive one; and he had been instructed to get Tully's gun if he could do so without paying any money.

The contention of the respondent is that on said day, to-wit, November 11th, Brennan pleaded guilty for both himself and Tully to an information charging them with having quail to transport out of the county and with hunting on Sunday, and paid the fines assessed and the costs. Brennan admits he paid $13.15 to the justice of the peace and took a receipt for it, but swore this money was paid to obtain possession of his and Tully's guns and was not in satisfaction of fines or costs of court. He testified further that he refused over and over again to plead guilty that he had hunted on Sunday in St. Charles county or had attempted to ship game out of the county. His version is that Bruere, prosecuting attorney of St. Charles county, Bruns, a justice of the peace, and Dierker importuned him to enter a plea of guilty, saying that course would be the cheapest and most convenient to pursue; but he refused to do so. The receipt was not produced; in fact Brennan swore that he gave it to Tully and the latter said it was lost; its contents were not proven.

An entry of judgment on the docket of the justice of the peace was introduced in evidence, which recited that Brennan, and Tully by Brennan, pleaded guilty on November 11th to having attempted to ship quail out of the county and to hunting on Sunday.

Counsel for appellant made repeated offers to prove that when the foregoing record was entered no affidavit had been signed; that appellant was never in court, never pleaded guilty and, in fact, that the entry

was written without any affidavit having been filed as the basis for information.

The circuit court excluded all this evidence, holding that the record of the justice of the peace could not be impeached nor controverted.

*W. H. Clopton* and *Edward H. Bickley* for appellant.

(1)   Sheriff and sureties are liable on bond for wrongful acts of sheriff done by virtue of or under color of his office.   State ex rel. v. Powell, 44 Mo. 436; Trigg v. Harris, 49 Mo. 176; State to use v. Farmer, 21 Mo. 160; Rollins v. State, 13 Mo. 437; Nolley v. Callaway County Court, 11 Mo. 447; Kendall v. Aleshire, 28 Neb. 707; State v. Walford, 11 Ind. App. 392; Cash v. People, 32 Ill. App. 250; State v. Gobin, 94 Fed. 48; Brown v. Weaver, 76 Miss. 7; Asher v. Cabell, 50 Fed. 818; Scott v. Ely, 4 Wend. 555; Griswold v. Sedgwick, 6 Cow. 456.

*Theodore Bruere & Son, T. F. McDearmon* and *C. W. Wilson* for respondents.

(1)   The liability of the sureties on the sheriff's bond is one of strict law, and may not be extended beyond the very letter of the bond.   Bank v. Traube, 75 Mo. 199; St. Louis v. Sickles, 52 Mo. 122.   (2) They are bound only for the faithful performance of the duties of his office on the part of the sheriff.   They are not liable where the sheriff goes entirely outside of and beyond his official duties, and commits a naked trespass or assault.   State ex rel. v. McDonough, 9 Mo. App. 63. (3)   Plaintiff R. L. Brennan appeared and pleaded guilty to the charge of hunting on Sunday, and of unlawfully attempting to ship quail out of St. Charles county—was fined and paid his fine and the costs and was discharged.   The record of the judgment in the justice's court is conclusive against him as to his guilt

of the offenses charged. (4) Under the statute the sheriff was authorized to arrest for shipping or attempting to ship quail without warrant. R. S. 1899, sec. 2313; R. S. 1899, sec. 2305 as amended.

GOODE, J.—We deem it unnecessary to consider and decide as to whether the record of the justice of the peace imports such absolute verity that evidence was inadmissible to show it was not based on any valid prosecution, and that the defendant in fact positively refused to plead guilty. It will be seen that the judgment is based on two supposed criminal charges, one for attempting to transport quail out of St. Charles county, and the other for hunting on Sunday. It is conceded by respondent's counsel that Dierker had no right to arrest the appellant for the latter offense without a warrant, because, if committed at all, it was not committed in the sheriff's presence and was a misdemeanor; as to the other charge, the contention of the respondent is that an arrest without a writ was authorized by the statutes. Without passing on the question of whether the appellant is barred of his action by a plea of guilty to that charge, let us admit for argument's sake that he is not and ascertain whether this action will lie if the arrest was illegal.

We think the law is that if the sheriff committed a tort in taking the appellant into custody without a warrant, an action for it will not lie on his official bond. Peace officers, in the absence of an empowering statute, have no authority to arrest an individual for a misdemeanor without process, except on view; that is, when they witness the perpetration of the offense. State v. Hancock, 73 Mo. App. 19; State v. Davidson,. 44 Mo. App. 513; State v. Underwood, 75 Mo. 230; State v. Grant, 76 Mo. 236; State v. Holcomb, 86 Mo. 371. And for an illegal arrest they are always liable personally to the injured citizen; but their bondsmen are not always liable.

A distinction which formerly enjoyed a wider vogue than it does now, is taken between the acts of a sheriff or other executive officer done by virtue of his office or *virtute officii,* and acts done under color of his office or *colore officii;* and there have been many decisions that the officer's sureties are responsible for acts of the first sort when they are illegal, but not for those of the second sort. This distinction is subtle and having proven barren of wholesome results, in recent well-considered judgments, it has given place to the rule that illegal acts done only *colore officii* lay the bondsmen liable if the illegality consists in an abuse of authority instead of an outright usurpation. Hawkins v. Thomas, 3 Ind. App. 399. Whether this doctrine is more tangible than the other or more likely to work satisfactorily remains to be seen; and it may well be doubted whether an official's sureties ought not to answer for any of his misconduct under color of office, unless it is apparent he made a pretext of his authority to gratify personal malice or accomplish a personal end. In this case it is plain that Dierker thought he was doing right, and he pointed the appellant to his bond as a means of redress if it turned out the arrest was unlawful.

But the cases in this and other courts have established the law as stated and furnish the rule of decision by which the present controversy must be settled.

In State ex rel. v. McDonough, 9 Mo. App. 63, the court held that an action could not be maintained on the bond of McDonough, as chief of police of the city of St. Louis, for a wrongful and malicious arrest under color of his office without a warrant, and in support of the decision Ex parte Reed, 4 Hill. 572, was cited. The authority of the latter case was shaken, perhaps, in People v. Schuyler, 4 N. Y. 173, wherein it was held that a sheriff and his sureties were liable on the sheriff's official bond when he, by a writ of attachment against one person, seized the goods of another; and this is the rule in Missouri. State ex rel. v. Moore, 19

Mo. 370; State ex rel. v. Fitzpatrick, 64 Mo. 185; State ex rel. v. Hope, 88 Mo. 430; State ex rel. v. Hadlock, 52 Mo. App. 297; State ex rel. v. Edmundson, 71 Mo. App. 172. It is also the general rule elsewhere. Lamison v. Feusier, 111 U. S. 17; Holliman v. Carrolls Admr., 27 Tex. 23; Forsyth v. Ellis, 4 J. J. Marsh. 299. And it has been held that the arrest of a person, under a writ issued for another person, renders the officer and his bondsmen liable. Clark v. Winn, 19 Tex. Civ. App. 223.

In Warrensburg v. Miller, 77 Mo. 56, the Missouri Supreme Court decided that the action of a town marshal in seizing, under color of his office, personal property for taxes, constituted ground for an action on his bond, although the levy was illegal and the process under which he acted void. To the same effect is State to use v. Shacklett, 37 Mo. 280, in which the process under which a sheriff seized property was void.

Those decisions seem to be inconsistent in principle with State ex rel. v. McDonough, supra, and the cases which hold that no action can be maintained on an official bond for an arrest made without process or under void process. If an officer acts entirely without process in arresting a citizen, the theory of the courts is that such high-handed and illegal conduct was never contemplated by either his bondsmen or the State and, hence, was not meant to be covered by the security given for his official behavior. And there is some reason in this theory, the fault of the law consisting chiefly in the fact that it is not always followed, whereby confusion has been introduced among the precedents.

The decisions frequently turn on the terms of the instrument, some bonds being of much greater breadth than others and covering a wider range of misconduct. Dierker's bond was conditioned as follows:

"Now, therefore, if the said John H. Dierker shall faithfully discharge the duties of his office as sheriff,

then the obligation to be void, otherwise to remain in full force and effect.''

That condition is less sweeping than certain undertakings of a similar nature which have been ruled to embrace conduct of the character complained of in this action.

In some States there have been statutory changes of the common-law rule. Kelly v. Moore, 51 Ala. 364.

In a recent opinion by a very able judge, the law bearing on the question of whether Dierker's arrest of Brennan was *colore officii* is thus stated:

''But when an officer assumes to act under color of his office, having no writ or process whatsoever, or having process which on its face is utterly void, it seems to be the prevailing doctrine that whatever he may do under such circumstances imposes no liability on his sureties. To constitute color of office such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity. If he is armed with no writ, or if the writ under which he acts is utterly void, and if there is at the time no statute which authorizes the act to be done without process, then there is no such color of office as will enable him to impose a liability upon the sureties on his official bond.'' Chandler v. Rutherford, 101 Fed. 777.

To the same general effect are Commonwealth v. Cole, 7 B. Monroe 25; Allison v. People, 6 Colo. App. 80; Eaton v. Kelly, 72 N. C. 110; McLendon v. State, 21 L. R. A. (Tenn.) 738; Cornell v. People, 37 Ill. App. 490; Gerber v. Ackley, 32 Wis. 233; Huffman v. Koppelkom, 8 Neb. 344, 12 Neb. 98. The subject is satisfactorily treated and the decisions reviewed in Hawkins v. Thomas, supra. It is stated in the note to McLendon v. State, supra, that the weight of authority supports the rule declared in State ex rel. v. McDonough, supra.

Dierker thought he was acting officially when he arrested the appellant, based his right to do so on the fact that he was sheriff, and the appellant yielded to him for that reason. So far as Dierker is concerned the case is clear. But his bondsmen must be considered and their rights are of prime importance in legal contemplation. Probably the confusion in such matters has grown out of the overweening tenderness of the law for sureties. Dierker's bondsmen did nothing and their responsibility turns, not on whether he thought his conduct was official, but whether it was such as the law classes among acts done under color of office. As there are controlling precedents directly in point, we feel bound to follow them without regard to the principle they recognize being out of harmony with the one recognized in the decision of other causes which do not stand on facts exactly similar.

The judgment is affirmed. *Bland, P. J.*, concurs; *Reyburn, J.*, dissents, because he deems the decision in conflict with the decision of the Supreme Court in Warrensburg v. Miller, 77 Mo. 56; State to use v. Shacklett, 37 Mo. 280. The cause is, therefore, certified to the Supreme Court.