### ST LOUIS KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

### AT THE

### MARCH TERM, 1917.

(*Continued from Volume* 197.)

## VILLAGE OF NIXA, ex rel. and to Use of CALVIN HEDGPETH, Respondent, v. J. B. McMULLIN, F. F. RICHTER, W. A. MEADOWS, B. FRANK WEST and FENTON DORAN, Appellants.

### Springfield Court of Appeals, March 24, 1917.

1. **MUNICIPAL CORPORATIONS: Marshal: Action for Damages: Instructions.** In an action against a village marshal for punitive damages for confining plaintiff in an unsanitary calaboose without food, water, or fuel, instructions as to punitive damages were faulty where they failed to require that before plaintiff could recover there must be a finding that he was damaged by his treatment.

2. ——: ——: ——: ——: **Evidence.** Such instructions were also erroneous because the evidence failed to justify them.

3. ——: ——: **Care of Prisoner: Statutes.** Under R. S. 1909, secs. 9439, 9464, defining the powers and duties of a village marshal, Sec. 9492, requiring a bond to faithfully perform duties, and Sec. 9436, giving board of trustees of village power to maintain a calaboose, a marshal making a lawful arrest must use care to see that his prisoner is not oppressed or treated inhumanely, and if the calaboose is known to him to be an unfit place of confinement, his failure to use due care and accord ordinarily decent treatment will be a breach of his bond.

4. ———: ———: Treatment of Prisoner: Action for Damages: Evidence. In an action against a village marshal for punitive damages for breach of duty under bond to use due care and accord ordinarily decent treatment, evidence *held* to sustain a judgment for defendant.

Appeal from Christian Circuit Court.—*Hon. John T. Moore*, Judge.

REVERSED.

*Charles F. Boyd* and *G. Perd Hays*, for appellants.

The court erred in admitting evidence as to the condition of the City Prison long after the discharge of the plaintiff therefrom, for it is too remote to shed any light upon the condition of the prison at the time plaintiff was in it, and could only tend to confuse the issues in the minds of the jury, to the prejudice of the defendants. Ritter v. First National Bank, 87 Mo. 574; Furgurson v. Thacher, 79 Mo. 511; Lore v. Forge, 19 Mo. App. 368; Morrison v. Garrison, 48 Mo. App. 54; Halpin v. Manny, 57 Mo. App. 59.

FARRINGTON, J.—Appellant McMullin as marshal of the village of Nixa arrested Calvin Hedgpeth, a man sixty-nine years of age, for being drunk and disorderly on the streets and confined him in a calaboose, a prison claimed to have been as dark and damp and dreary as the historic Tower of London and yet so diminutive in the sight of those who had sojourned there that it is contemptuously called the Two-by-Four.

Hedgpeth brought this action against McMullin and his bondsmen for $900 actual and $100 punitive damages, claiming, in the first count of his petition, that McMullin wrongfully and maliciously arrested him on February 23, 1916, while he was quietly walking about the streets of the village violating no law or ordinance, and wrongfully imprisoned him for a period of ——days, pleading damage, and, in the second count, the same facts with the additional charge that it was the duty of the

marshal to look after the jail and give prisoners humane treatment, whereas, wholly disregarding such duties, the marshal confined plaintiff in this jail which he had allowed to become filthy and insanitary, for a period of ——days, wrongfully and maliciously causing plaintiff there to remain without food or water, at a time when the weather was extremely cold, and that there was no fuel provided by the marshal and that from the exposure plaintiff became sick, etc. The evidence shows that plaintiff was arrested about five or six o'clock in the afternoon and was released the next morning between seven and eight o'clock and told to go before the mayor, and, when it was discovered he had not done so, he was again confined until later in the morning when he was taken before the mayor and paid a fine and the costs.

The jury returned a verdict for plaintiff for $50 on the second count. They evidently believed the marshal and his numerous witnesses who testified to the fact that Hedgpeth was intoxicated and disorderly on the streets, so that the question of unlawful arrest is out of the case.

The ordinance authorizing the arrest for being on the street in the village of Nixa in a state of intoxication was introduced in evidence.

The powers and duties of a village marshal are set fourth in sections 9439 and 9464, Revised Statutes 1909.

The bond sued on was given in conformity with section 9492, Revised Statutes 1909.

Section 9436, Revised Statutes 1909, gives the board of trustees of a village power to erect and maintain a calaboose. There is no contention that the calaboose in which plaintiff was confined was not the village jail nor that the marshal did not use it as a place to confine transgressors of the ordinances. He was undoubtedly familiar with its condition.

The jury found for the plaintiff on the second count and we will turn to the instructions given on this phase of the case. They are as follows:

"2. If you find from the greater weight of the evidence that J. B. McMullin arrested Calvin Hedgpeth

and placed him in the calaboose or jail in said village and you further find that said jail or calaboose was damp and in an unsanitary condition and you further find that the weather was cold and you further find that said marshal neglected or refused to feed said prisoner and furnish wood and water to said·prisoner and treat him in a humane manner, you will find the issues for the plaintiff on the second count in the petition and assess his actual damages in any sum not to exceed $1,000.''

"3. If you find plaintiff entitled to recover on either count or both, in his petition you can only find not more than Nine Hundred Dollars actual damages and not more than One Hundred Dollars punitive damages on both or either counts.''

"6. If you find from the evidence that the marshal treated the plaintiff humanely, furnished him with food and wood and you find that said jail or calaboose was in a reasonably fair condition, then in that case you should find the issues for the defendant on the second count in the petition.''

These instructions are not only faulty in failing to require that before plaintiff can recover there must be a finding that he was damaged by reason of the treatment accorded him at the marshal's hands, but for the further reason that the evidence fails to justify the giving of them at all.

The verdict for the defendants on the first count is supported by the overwhelming weight of the evidence that plaintiff was intoxicated and violating the city ordinance and that the marshal was acting by virtue of his office in arresting and confining him until he could be brought before the village bar of justice.

The most that can be made out of the evidence is that between five and six o'clock one evening in February (the evidence failing to disclose how cold it was) the plaintiff was lawfully arrested by the marshal for being intoxicated and disorderly after having been warned by the marshal and some of plaintiff's friends that he was intoxicated and that he had better go home.

Plaintiff's testimony is very contradictory. He testified in the first place that he was kept in the calaboose as much as twenty-four hours, and immediately afterward testified—"He came the next morning and never offered me a bite to eat, no wood, no water, and hardly said a word." And it may be remarked that in both counts of his petition it was alleged that he was confined there for ——days. The plaintiff also testified that he was released in the morning and was then put back in the calaboose until ten o'clock at which time he went before the magistrate. The evidence clearly shows that he pleaded guilty to violating the ordinance.

Plaintiff testified that there was no fire, no wood, no matches, an old mattress, wet quilts, nothing to eat, and cold. He admitted he took the stovepipe down and laid it by the stove for the purpose, as he says, of letting in light, and that there were two small windows in the jail. He testified that the calaboose wasn't fit for a spotted dog. The marshal testified that when he arrested him plaintiff was "slobbering and spitting like a mad dog"; that the jail was not wet; that there was a stove, wood, and a box which he told plaintiff could be used as kindling; and that he took some supper and water to plaintiff from his home after he had eaten his supper. The village blacksmith saw him going to the jail with these, and the marshal's wife testified to having fixed up the food and water. The marshal testified that the quilts were made wet by plaintiff's own excretion and plaintiff did not see fit to deny this. Defendant's evidence also shows that when plaintiff was released from the calaboose about seven or eight o'clock the next morning he went to a restaurant where he was served coffee and eggs, and plaintiff did not deny this.

We hold the law to be that a marshal who makes a lawful arrest must use care to see that his prisoner is not oppressed and that he must not be treated inhumanely, and that, if a calaboose is in such condition—known to the officer—as to be an unfit place in which to confine a man overnight without endangering his physical condition he must not put him in there; and a fail-

ure to use such due care and accord ordinary decent treatment will be a breach of his bond to faithfully perform his duty. The arrest as shown in this case being lawful, the marshal acting by virtue of his office in detaining the plaintiff, would, if he failed to exercise ordinary care for his prisoner make him and his bondsmen clearly liable. This is undoubtedly the law in this and other states. [See, State ex rel. Brennan v. Dierker, 101 Mo. App. 636, 74 S. W. 153; State ex rel. Zimmerman v. Schaper, 152 Mo. App. 538, 134 S. W. 671; State to use of Goodin v. McDonough, 9 Mo. App. 63; State of Mississippi ex rel. McLauren v. McDaniel (Miss.), 50 L. R. A. 118; Stephenson v. Sinclair (Tex.), 36 S. W. 137; Clancy v. Kenworthy (Ia.), 35 N. W. 427; Gerber v. Ackley (Wis.), 19 Am. Rep. 751; 29 Cyc. 1455.]

There is no evidence in this case of inhumane treatment or oppression in confining plaintiff in the calaboose at about six o'clock in the evening and releasing him the next morning without furnishing him any food. There is a failure to show that the weather was so inclement that to keep plaintiff there overnight was an act which no ordinary prudent officer would have done. The plaintiff's case in this record is purely imaginative and is not supported by any substantial evidence. Transgressors of the law who find themselves in the custody of officers can only expect to be treated with ordinary care so that they will not be used oppressively, and must remember that village jails are not built with a view of furnishing the luxuries of life.

There was incompetent evidence admitted which it will not be necessary to discuss as the view we take of the case disposes of the whole matter.

There is no evidence on which a jury could be permitted to find that there was a breach of the bond, the judgment will therefore be reversed. *Cox, P. J.*, and *Sturgis, J.*, concur.