Thomas A. MILLER, Appellant,

v.

Arvid OWSLEY, Lloyd Hilburn, and Travelers Insurance Company of Hartford, Connecticut, Respondents.

Lee Roy REED, Appellant,

v.

Arvid OWSLEY, Lloyd Hilburn, and Travelers Insurance Company of Hartford, Connecticut, Respondents.

Nos. 52264, 52443.

Supreme Court of Missouri, En Banc.

Nov. 13, 1967.

Philip C. Ehli, Kansas City, for appellant.

Donald G. Stubbs, Kansas City, for respondents.

FINCH, Judge.

These two cases were consolidated for briefing and argument on appeal and one opinion will cover both cases. The petitions are nearly identical and each was dismissed for failure of the petition to state a cause of action. Each plaintiff filed suit against Arvid Owsley, Sheriff of Jackson County, Lloyd Hilburn, his Chief Deputy, and Travelers Insurance Company of Hartford, Connecticut, surety on their official bonds, seeking to recover $50,000 actual and $50,000 punitive damages for injuries received at the hands of fellow prisoners while incarcerated in the Jackson County Jail. The trial court sustained defendants' motions to dismiss the petitions and plaintiffs appeal.

The petition in the Reed case recites that plaintiff was arrested on burglary charges and was placed in the Jackson County Jail in the care, custody and control of Owsley and Hilburn on or about May 3, 1964. It alleges that as a result of negligence, carelessness, maliciousness, willfulness, and utter disregard of the rights of plaintiff, he was placed by defendants Owsley and Hilburn in a compartment in the jail with inmates of vicious and murderous disposition, by whom plaintiff was assaulted and seriously injured. It alleges further that said Owsley and Hilburn failed to exercise reasonable care and prudence in knowingly permitting and consenting to a system wherein these hardened criminals established cell units in which such criminals exercised autonomous control over other inmates in the cell, imposing injury, abuse and other indignities on such fellow inmates. The petition also alleges failure and refusal of Owsley and Hilburn to provide medical aid to plaintiff after he was injured and physically abused and had requested medical aid. These two alleged failures are the things for which the petition apparently seeks recovery. Other subparagraphs allege failure to make reasonable inspection of cells, failure to check on the well-being of prisoners, and failure in connection with the selection and training of employees. Apparently, these latter allegations are made in connection with the two ultimate contentions of mistreatment of plaintiff by placing him in a cell with vicious criminals and by failing to provide medical attention. In and of themselves, these allegations about failure to make reasonable inspections, etc., do not provide

a basis for recovery by plaintiff. They appear to be pertinent only as they may pertain to and help to establish the two asserted grounds alleged to have resulted in damage to plaintiff.

The second count reiterated the allegations in Count I and alleged the acts to have been wanton, willful, malicious, and in utter disregard of the rights and safety of plaintiff.

Plaintiff Miller was arrested and jailed on a charge of possessing and uttering forged instruments. In his case the petition does not contain the paragraph relative to the cell units which is included in the Reed petition, but it does contain the other allegations relative to knowingly placing plaintiff in the same cell with inmates of vicious disposition. For purposes of our consideration, we treat the petitions as substantially similar.

Defendants' motions to dismiss alleged (1) failure of the petition to state facts showing that plaintiff was entitled to relief and (2) immunity of defendants as Sheriff and Chief Deputy of Jackson County because "all of the acts alleged in plaintiff's petition were acts performed by said defendants in the carrying out of the duties of the office of Sheriff of Jackson County, Missouri, as required by the Constitution and Statutes of the State of Missouri."

■ Section 57.020 (all statutory references are to RSMo 1959, V.A.M.S.) requires every sheriff to give a bond with approved surety "conditioned for the faithful discharge of his duties." This bond would cover both duties prescribed by statute and common law duties.

■ We have concluded that each of the petitions herein alleges enough to state a claim and that the trial court erred in sustaining motions to dismiss. Each petition obviously is intended as a suit on the bond of defendant officers, although a copy of the bond is not attached and there is no allegation in the petition as to the penalty

of the bond or any details as to its execution and approval. It does allege that defendant Travelers Insurance Company was surety on the official bond of the individual defendants and that the bond was executed in accordance with law. Whatever deficiencies there are in the details of the allegations with respect to the bond can and should be remedied by amendments in the trial court on remand of these cases. A copy of the bond should be attached and the allegations of the petition should recite the conduct and acts alleged to constitute violations of the faithful performance of the officers' duties and hence violations of the terms of the bond. Acts which do not constitute violations of the sheriff's duties should not be included.

The courts of this state have recognized in various situations a liability on the part of peace officers and their sureties for which recovery has been permitted on their official bonds. A few cases will illustrate.

In State ex rel. and to Use of Donelon v. Deuser et al., 345 Mo. 628, 134 S.W.2d 132, there was a verdict against the sheriff and his surety for injuries inflicted by a deputy sheriff in making an arrest. Plaintiff and three companions had been drinking beer and started walking home. Plaintiff and a young man named Burns were walking together and as they passed some other people a difficulty arose between Burns and these other parties. Burns was struck over the head with a bottle which broke, cutting Burns on the head. He staggered toward the street and plaintiff followed him, intending to aid him and prevent him from being struck by cars. At about that time, the deputy sheriff appeared and, according to plaintiff's evidence, struck plaintiff over the head with his club, placed him in a car and took him to jail, without making any investigation as to who was causing the disturbance. Plaintiff was held in jail about twenty hours and discharged. He brought suit to recover for injuries alleged to have been sustained as a result of the assault committed on him by

the deputy sheriff. The trial court granted a new trial on the ground that the damage instruction was erroneous. This court, in an opinion by Judge Westhues, held that alleged trial errors did not justify a new trial and reinstated the verdict. The opinion quotes from 6 C.J.S. Assault and Battery § 23 b, p. 825, as follows: "A peace officer or other person duly empowered is not liable for injuries inflicted by him in the use of reasonably necessary force to preserve the peace and maintain order, or to overcome resistance to his authority." The court pointed out that, at defendant's request, the trial court so instructed the jury. However, it also properly instructed the jury that plaintiff could recover if Donelon did not resist arrest and if the deputy sheriff unnecessarily and without cause struck and beat Donelon. The court noted that the evidence of plaintiff and his witnesses, if true, indicated that the assault by the deputy was unprovoked, unjustified and brutal. The fact that the officer was making an arrest in which he had some discretion did not cloak him and his surety with complete immunity, regardless of what he did in exercising that discretion in making the arrest.

In State ex rel. and to Use of Kaercher v. Roth et al., 330 Mo. 105, 49 S.W.2d 109, plaintiff sought to recover for injuries resulting from gunshot wounds received when a deputy constable, in seeking to make an arrest, shot at an automobile in which the plaintiff was a passenger. The deputy constable observed this car speeding in Central township, where he was a deputy constable. The deputy pursued the car into the City of St. Louis, and in attempting to stop the car and make the arrest, fired at the car, some of the shots hitting plaintiff. This court's opinion points out that, even leaving out of consideration the fact that they had crossed township lines, the deputy had no right to shoot in seeking to make an arrest for a misdemeanor, and that the constable and his surety were liable. The contention that when the deputy crossed the township line he ceased to act in his official capacity so that his surety would not be liable was rejected. The court said, l. c. 110: "If the act was done by virtue of his office or under color of office, then the bondsman, surety company, is liable in damages for the injuries inflicted." The trial court had sustained a demurrer to the petition, but this court sent the case back for trial.

In City of Advance ex rel. Henley v. Maryland Casualty Company, Mo., 302 S.W.2d 28, the city marshal observed plaintiff speeding within the city limits of Advance. Later that evening, the marshal went outside the city limits and, without a warrant, arrested the plaintiff for speeding within the city limits. Plaintiff sued for personal injuries sustained during an alleged unlawful assault upon and battery of plaintiff by the defendant marshal when making the arrest. The defendants alleged that no more force was used than reasonably necessary for the marshal to defend himself after plaintiff first struck and hit him and for the purpose of preventing plaintiff from escaping custody. This court held that the statutes did not authorize the defendant marshal to make the arrest in question, that the arrest was unlawful, and that the marshal and his surety were liable for any injuries sustained by plaintiff directly resulting from his unlawful arrest and restraint.

In Parrish v. Herron et al., 240 Mo.App. 1156, 225 S.W.2d 391, plaintiff obtained a verdict for false arrest and imprisonment against the sheriff and his deputies and their surety. Plaintiff was arrested and imprisoned on a charge of having taken property of another. The officers claimed that they had been able to track the plaintiff from the scene where the things were taken and that they had reasonable cause to suspect that plaintiff had committed a felony, which would entitle them to arrest him without a warrant. Upon the evidence, the court declined to hold as a matter of law that the officers had reasonable grounds to suspect that plaintiff had

committed a felony, and therefore ruled that this was a question for the jury. In so holding, the court recognized that the general rule is that whether there is reasonable cause for suspecting that a person has committed a felony is for the jury, except when the facts are undisputed. Clearly, this was an instance in which the officers were called upon to exercise their discretion, but since the facts were disputed, the court held that whether there was in fact reasonable cause, and therefore whether that discretion had been exercised reasonably or arbitrarily, was a question for the jury. Thus, the mere fact that the peace officers exercised some judgment in determining whether there was reasonable cause for arrest did not cloak them with absolute immunity from suit and liability.

It is true that in the foregoing cases liability was imposed on the basis of affirmative acts of the sheriff or his deputy against the person of an individual, such as false arrest or imprisonment, excessive force in making an arrest, or an assault by an officer on a person where there was no right to make an arrest. We have held that these acts constitute violations of the officer's official bond. In the petitions which we now consider, the plaintiff alleges that there was a system in the jail, known to the sheriff and his chief deputy, wherein hardened criminals in the jail conducted a cell unit in which, in a kind of kangaroo court, such persons administered their own "justice" and punishment, resulting in injury and abuse to other inmates of that cell, and that the individual defendants knowingly placed plaintiff in such a cell with inmates known to the defendants to do these things. The question we must determine is whether this conduct, if proved, would constitute failure on the part of a sheriff to faithfully perform the duties of his office and thereby establish liability on his official bond.

The case of Village of Nixa ex rel. and to Use of Hedgpeth v. McMullin, 198 Mo. App. 1, 193 S.W. 596, dealt with a common law duty of an officer with reference to the care and treatment due a prisoner in his custody. That was a suit against a town marshal and his bondsmen in two counts, plaintiff claiming in Count 1 that he had been wrongfully arrested and imprisoned by the marshal, and in Count 2 that it was the duty of the marshal to look after the jail and give the prisoner humane treatment, whereas, in fact, he confined plaintiff in a jail which was filthy, insanitary and cold, without furnishing any food or water. The jury found for the defendant marshal on Count 1, evidently on the theory that plaintiff was intoxicated and disorderly, justifying the arrest, but it gave the plaintiff a verdict for $50 on Count 2. Judge Farrington reversed the judgment on the basis that the evidence simply did not sustain any recovery by plaintiff for inhumane treatment. He reviewed the evidence and pointed out why there was no evidence to show inhumane treatment. In the course of the opinion, however, l. c. 598, he stated: "We hold the law to be that a marshal who makes a lawful arrest must use care to see that his prisoner is not oppressed, and that he must not be treated inhumanely, and that, if a calaboose is in such condition—known to the officer—as to be an unfit place in which to confine a man over night without endangering his physical condition, he must not put him in there; and a failure to use such due care and accord ordinary decent treatment will be a breach of his bond to faithfully perform his duty. The arrest, as shown in this case being lawful, the marshal acting by virtue of his office in detaining the plaintiff, would, if he failed to exercise ordinary care for his prisoner, make him and his bondsmen clearly liable. This is undoubtedly the law in this and other states." See, also, Annotation—Liability for death or injury to prisoner, 61 A.L.R. 569, and Annotation—Civil liability of sheriff or other officer charged with keeping jail or prison for death or injury of prisoner, 14 A.L.R.2d 353.

**44**

Defendants cite cases such as Hinds v. City of Hannibal, Mo., 212 S.W.2d 401, wherein plaintiff sought recovery from the city for injuries allegedly received as a result of an assault by a police officer. Governmental immunity of the city itself was sustained and the suit dismissed. The case is not authority, however, for the proposition that there may be no recovery on a sheriff's bond for treatment of a prisoner, as the cases hereinbefore discussed clearly indicate. The case of City of St. Louis ex rel. Forest v. Nicholas, Mo.App., 374 S.W. 2d 547, also is cited. That was a suit wherein an inmate of the city workhouse who had an artificial leg fell and was injured when taking a shower pursuant to a rule of procedure applicable to the workhouse. The Court of Appeals sustained the action of the trial court in dismissing the suit against the director of public welfare and the director of the workhouse, but the court specifically noted, l. c. 550, that the situation was not analogous to suits involving bonds of sheriffs or constables for acts of their deputies. We find nothing in these or other cited cases which cause us to conclude other than as we have stated herein.

■■ The sheriff is not an insurer of the safety or health of his prisoners. However, if he has knowledge of a custom of certain prisoners to assault or beat or physically abuse other prisoners, such as plaintiffs, then it is his duty, in the exercise of ordinary care, to use such means as are at his command to prevent such unlawful acts. He also has certain duties relative to medical attention for prisoners imposed by § 221.120. The issues of whether he has breached the duties enumerated in this paragraph are jury questions if sufficient evidence is offered to make a submissible case thereon, just as the issue of probable cause for arrest in the Parrish case was a jury issue.

It is true, as defendants point out, that the petitions in these two cases characterize alleged acts of Owsley and Hilburn as negligence. It also is true, as we have indicated, that at least some of the allegations also constitute the assertion of a failure on the part of the officers to faithfully discharge the duties of their office. We do not remand these cases for trial on the basis that the petitions state a cause of action for negligence. We do so on the basis that they state a cause of action for breach of the official bond. Our holding herein that the sheriff has a duty, under certain circumstances, to use ordinary care and that the jury will be required to determine whether he breached that duty does not alter the fact that the suits are for breach of his official bond.

The action of the trial court in sustaining the motion to dismiss the petition in each of these cases is reversed and the causes are remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

HOLMAN, C. J., and HENLEY, DONNELLY, and SEILER, JJ., concur.

EAGER, J., dissents.

STORCKMAN, J., dissents in separate dissenting opinion filed.

Dissenting Opinion

STORCKMAN, Judge.

I do not consider Parrish v. Herron, 240 Mo.App. 1156, 225 S.W.2d 391, to be adequate authority to support the conclusion reached in this case. The weight of authority seems to be that a peace officer may be held liable for unlawful acts or torts deemed to be willful or intentional, but not for acts of simple negligence. That the petition charges negligence was confirmed by counsel for the parties in oral argument. The majority opinion states that the cause is not remanded "on the basis that the petitions state a cause of action for negligence", yet in the immediately preceding paragraph the opinion states that it is the

duty of the sheriff "in the exercise of ordinary care" to use the means at his command to prevent any of his prisoners from being beaten or abused by others and to secure and furnish medical attention. In my opinion, everything charged in the petition is based on negligence.

Furthermore, all of the matters charged call for the exercise of judgment within the domain of sovereign immunity. If the times demand that this doctrine be changed, then the liability should be imposed on the county or state if the law-abiding citizen is to be protected. Otherwise, no self-respecting person will be found to serve as police officers, jailers and prison physicians. I would affirm the judgment of the trial court.

For these reasons I respectfully dissent.