**Robert W. JACKSON, Appellant,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, et al., Respondents.**

No. 56496.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1972.

**316**

Paul Scott Kelly, Jr., Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, for respondents, Hartford Accident & Indemnity Co. and Marvin Rice.

Robert A. Schroeder, Schroeder & Schroeder and Theodore J. Furry, Birmingham & Ferry, Kansas City, for respondent, John Fetzer.

HIGGINS, Commissioner.

Appeal from summary judgment in favor of defendants in plaintiff's action for $390,000 compensatory and $500,000 punitive damages for personal injury.

On June 23, 1967, plaintiff filed this action and, on the same day, filed an action against the same defendants in the United States Court for the Western District of Missouri. The pleadings in both actions follow:

Elwyn L. Cady, Jr., Independence, for appellant.

| STATE COURT | FEDERAL COURT [1] |
|---|---|
| Omitted | 1. *This action arises under 42 U.S. C. § 1983* [2] * * *. |
| 1. Plaintiff is a citizen and resident of Jackson County, Missouri. Defendant Hartford Accident and Indemnity Company (hereinafter designated "HARTFORD") is a foreign insurance company of Hartford, Connecticut, doing business in Missouri with an office in Kansas City, Missouri from which office the insurances guaranteeing the performance of duty by defendants Rice and Erickson were issued. Defendant Rice was at the time in issue the Sheriff of Chariton County, Missouri and defendant Erickson was his deputy. Defendant Fetzer is an osteopath who was summoned by the defendant sheriff and, acting under his direction and color of law, proceeded to undertake the osteopathic treatment of plaintiff at the | 2. Plaintiff is a citizen and resident of Jackson County, Missouri, *and of the Negro race.* Defendant Hartford Accident and Indemnity Company (here*i*after designated "HARTFORD") is a *f*oreign insurance company of Missouri with an office in Kansas City, Missouri from which office the insurances guaranteeing the performance of duty by defendants Rice and Erickson were issued. Defendant Rice was at the time in issue the Sheriff of Chariton County, Missouri and defendant Erickson was his deputy.*m* Defendant Fetzer is an osteopath who was summoned under color of law and custom by defendant Sheriff to the jail in which plaintiff was incarcerated and acting under said Sheriff's direction and *not in his private* |

---

1. As amended prior to trial.

2. Italicized matters omitted or changed in State Court petition.

time and place hereinafter mentioned.

2. In about September and October, 1965, plaintiff was confined in the Chariton County jail at Keytesville, Missouri under process of law. He had been subjected to physical striking incident to his arrest with injury to his jaw and to his finger.

3. Plaintiff remained confined in said jail for 54 days, more or less, all of which time he was in extreme pain and mental anguish as a result of his injuries.

4. Defendants Rice, Erickson and Fetzer, *s*together with defendant HARTFORD as surety, were charged by law with the duty to confine plaintiff in healthful conditions and to furnish non-negligent professional medical and surgical attention to plaintiff as was required to fulfill the duty imposed by law.

5. Said defendants did fail to provide such medical and surgical care in that at no time was plaintiff's jaw or finger examined by routine x-ray procedures to establish a proper diagnosis for the condition of ill-being causing the continued pain and suffering throughout plaintiff's 54-day stay under the care and control of defendants.

6. As a result of defendants' failure to execute their respective legal

*capacity but* under color of *usage custom and* law, proceeded to undertake the osteopathic treatment of plaintiff *in said jail during his incarceration as set forth below.*

3. In about September and October, 1965, plaintiff was confined in the Chariton County jail at Keytesville, Missouri under color of law. He had been subjected to physical striking incident to his arrest with injury to his jaw and to his finger.

4. Plaintiff remained confined in jail for 54 days, more or less, all of which time he was in extreme pain and mental anguish as a result of his injuries. *He made repeated complaints of pain and anguish to the individual defendants named herein and asserted the obvious need for x-rays of his extremely painful jaw.*

5. Defendants Rice, Erickson, and Fetzer, together with defendant HARTFORD, as surety, were charged by law with the duty to confine plaintiff in healthful conditions and to furnish non-negligent professional medical and surgical attention to plaintiff as was required to fulfill the duty imposed by law.

6. Said defendants did fail to provide such medical and surgical care in that at no time was plaintiff's jaw or finger examined by routine x-ray procedures to establish a proper diagnosis for the condition of ill-being causing the *j*continued pain and suffering throughout plaintiff's 54-day stay under the care and control of defendants, *and despite plaintiff's repeated pleas for such x-rays and his continued reports of pain, particularly in his jaw.*

7. *Said failure of duty amounted to cruel and unusual punishment in violation of the Eighth Amendment and a lack of due process under the Fourteenth Amendment.*

8. As a result of defendants' failure to execute their respective legal

duties, plaintiff did sustain permanent dysfunction of the jaw and finger, he was required to incur substantial rehabilitative surgery; he sustained continued pain and suffering, mental anguish, humiliation, embarrassment, together with disfigurement.

7. Plaintiff has called upon defendant HARTFORD to discharge its obligation as surety by payment over to plaintiff the described face amount of the various bonds written by said HARTFORD, including N–3500194–A and N–366773–A, but that said defendant has exhibited a lack of good faith in not so performing within a 40-day period immediately preceding the filing of this action.

WHEREFORE, plaintiff prays for judgment against each and every defendant in the sum of $390,000 compensatory damages and $500,000 punitive damages, and costs.

duties, plaintiff did sustain permanent dysfunction of jaw and finger; he was required to incur substantial rehabilitative surgery; he sustained continual pain and suffering, mental anguish, humiliation, embarrassment, together with disfigurement, *all of which are permanent.*

9. Plaintiff has called upon defendant HARTFORD to discharge its obligation as surety by payment over to plaintiff the described face amount of the various bonds written by said HARTFORD, including N–3500194–A and N–366773–A, but said defendant has exhibited a lack of good faith in not so performing within a 40-day period immediately preceding the filing of this action.

WHEREFORE, plaintiff demands judgment against defendants, and each of them, in the sum of $600,000 compensatory damages and $600,000 punitive damages, *and in addition a statutory 10% penalty and attorney's fees in judgment against defendant HARTFORD,* and costs.

---

The federal court action was tried before the court, the Honorable William H. Becker, Chief Judge, without a jury, and, on January 15, 1969, the court entered judgment for all defendants by memorandum opinion, findings of fact and conclusions of law, pertinent parts of which follow:

"Viewed in the light most favorable to the plaintiff, the complaint charges that the plaintiff was confined in the Chariton County Jail in Keytesville, Missouri, under authority of state law; that he was physically struck and injured; that he remained confined in jail while he was in extreme pain and mental anguish as a result of his injuries; that the defendant Sheriff Rice, defendant Deputy Sheriff Erickson, the defendant osteopath Fetzer, and defendant Hartford Accident and Indemnity Company, the surety on the official bond of Sheriff Rice and Deputy Sheriff Erickson, are liable because of a breach of duty by defendants to confine plaintiff in healthful conditions and to furnish non-negligent professional medical and surgical attention to the plaintiff; and that the defendants failed to provide medical and surgical care by failing to examine plaintiff's jaw and finger by x-ray procedures and as a result of such failure the plaintiff sustained continual pain and suffering, mental anguish, humiliation, embarrassment and disfigurement, all of which are permanent.

* * * * * *

"Section 1983, Title 42. U.S.C., under which this action was instituted, provides

that damages may be recoverd only as a result of the violation of a federal constitutional or statutory right by an individual acting 'under the color of state law.' The primary liability sought to be adjudicated in the case at bar is that of the defendants Rice and Erickson, whose status as state officers acting under color of state law is clear. [§ 221.120, V.A.M.S.] Similarly, the only plausible federal constitutional or statutory right to be here is that of an individual to be free from cruel and unusual punishments under the Eighth and Fourteenth Amendments to the Constitution of the United States. The standard to be applied with respect to the conduct of the defendant sheriff is whether, upon the appearance that the prisoner was in need of medical treatment and was unable to secure it because of lack of funds or the conditions of confinement, he refused to provide such medical treatment intentionally, recklessly, or in callous disregard of plaintiff's rights or welfare, the equivalent of gross negligence. Simple negligence is not enough. The facts of the case divulge neither the intentional deprivation of such treatment nor the callous, reckless, or grossly negligent disregard of the rights or welfare which could be equated with the intentional violation of plaintiff's constitutional rights. The uncontradicted evidence shows that defendants Rice and Erickson provided apparently competent practitioners to attend plaintiff each and every time he requested medical service and that there was no other instance of apparent need in which Sheriff Rice of his deputy Erickson refused or neglected to provide an apparently competent practitioner. These defendants were not otherwise legally obligated by the federal law to provide special services, such as an X-ray diagnosis, when it was not requested by any of the apparently competent attending doctors. It is a matter of record that the sheriff cooperated to accomplish plaintiff's early release for the purpose of obtaining the x-ray services which plaintiff finally received at General Hospital in Kansas City. So there was no violation of plaintiff's federally protected rights in this case. Therefore neither Sheriff Rice, Deputy Erickson, nor Dr. Fetzer are liable to the plaintiff.

"For the same reasons, the guarantor of defendant Rice's faithful performance of duty, defendant Hartford Accident and Indemnity Company, is not liable to plaintiff. The question whether such a surety upon a sheriff's bond would be liable in a case in which the sheriff is found liable need not be determined here. In its brief, the defendant surety argues that its bond is conditioned only upon defendant sheriff's faithful performance under the Missouri Constitution and laws, not the federal constitution or laws.

"The defendant Fetzer, upon the facts shown by the evidence, could not reasonably be found to have accorded the plaintiff negligent treatment, much less to have subjected him to cruel and unusual punishment within the proscription of the Eighth and Fourteenth Amendments. Dr. Quinn testified that he was familiar with the standard of care normally to be exercised by doctors in Chariton County and that that standard was not violated by Dr. Fetzer's course of examination and treatment in the present case. While there is a substantial question in ordinary malpractice actions whether the community standard is applicable, the evidence here does not show lack of care under any standard. Dr. Fetzer appropriately diagnosed and treated the infected tooth, and not untimely, in view of the circumstances, suspected plaintiff's jaw to be broken, whereupon he took steps to effect plaintiff's immediate and early release for the purpose of having an X-ray taken. No negligent treatment of plaintiff's finger, either, is indicated by the evidence here. As in the case of the defendant surety, therefore, the question of whether Dr. Fetzer was a person acting under color of state law need not be reached here. Without so holding, it will be assumed that he was for purposes of decision. In his brief, defendant Fetzer contends that he did not act under 'color of state law' since Section 221.120, MoRS, 1959, V.A.M.

S. provides that it is the *jailer* who is to provide needed medical services to the prisoner when in his judgment they are necessary. The same statute, however, alternatively provides for the employment of a county physician by the county court, and Dr. Fetzer was functioning in the position of such a county physician. This office gives him some state authority. Further it is not in that case necessary that the officer act in accordance with some statute in inflicting harm to constitutional right so long as he merely acts under color of state authority.

"It is not necessary, finally, to reach the question of whether any degree of medical malpractice is cognizable under the Civil Rights Act, inasmuch as it is the finding here that no malpractice occurred."

Upon appeal, the facts were reviewed and these findings were found supported by substantial evidence. Jackson v. Hartford Accident and Indemnity Company, 8 Cir., 422 F.2d 1272.

In November, 1970, following the denial of certiorari by the United States Supreme Court, 400 U.S. 855, 91 S.Ct. 86, 27 L.Ed. 2d 92, defendants filed their motions for summary judgment in this state court action on grounds of no genuine issue of material fact, and that plaintiff's action was barred as a matter of law by the judgment of the federal court, same being *res adjudicata* and constituting a collateral estoppel to plaintiff's state court action.

On this appeal, appellant contends that the court erred in sustaining defendant's motions for summary judgment asserting (I) that genuine issues of fact were presented "touching upon requirements of the sheriff and his agents to faithfully perform duties of essential medical care to the prisoner * * *"; (II) that plaintiff was "foreclosed" from his right to litigate a common-law tort on its merits under due process concepts; and (III) that there was no element of estoppel resulting from "separate litigation of the civil rights case in

federal court and this common law tort action in the state court."

Appellant's argument does little to amplify his points. Under (I) he asserts only that under Miller v. Owsley, Mo., 422 S.W. 2d 39, "negligence and faithful performance of duties are equated * * * and the opportunity to present evidence thereon before a jury is secured." He does not suggest what fact issue under this theory yet remains after his federal court litigation. Under (II) he asserts only that under the 14th Amendment to the United States Constitution and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, "the right of Jackson to litigate his common law tort action in jury trial appears fundamental." Again, he does not suggest what fact issue under this "concept" yet remains after his federal court litigation. Under (III), he asserts that "the same circumstances give rise to two separate causes: (1) * * * under the Civil Rights Act * * * and (2) the common law tort action herein"; and that "the standards for each are different so that a jury verdict responsive to one set of standards for one action could by no stretch of legal fiction be considered to conclude another jury verdict upon another distinct submission of standards." See Smith v. Cremins, 9 Cir., 308 F.2d 187. Again, there is no suggestion of unlitigated fact issues.

This vacuum with respect to existence of genuine fact issues is emphasized by comparison of the state court petition and the federal court complaint. Such comparison demonstrates that the thrust of both actions, irrespective of characterization by plaintiff and court in which filed, is that while incarcerated in jail defendants failed to furnish plaintiff with "nonnegligent medical care." Jackson v. Hartford Accident and Indemnity Company, supra, 422 F.2d 1. c. 1273. The parties are the same; witnesses are the same; evidence would be the same. A jury-waived hearing was accorded; and, among other things,

the court found that defendant Fetzer could not reasonably be found to have accorded plaintiff negligent treatment; that no medical malpractice occurred; that defendants Price and Erickson provided competent practitioners to attend plaintiff with respect to their duties in keeping prisoners under Section 221.120, V.A.M.S.; that there was no violation of plaintiff's federally-protected rights; that, accordingly, defendants were discharged of all liability which plaintiff claims or could claim to exist in his complaint. All such findings were reviewed and affirmed to the effect that "there was no evidence of negligence," and "since the evidence clearly supports Judge Becker's holding that defendants were guilty of no negligence whatsoever, we do not need to reach the question of application of the federal act." Jackson v. Hartford Accident and Indemnity Company, supra, 422 F.2d 1. c. 1273, 1275.

■ "'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief.'" Butler v. Manley, Mo. App., 416 S.W.2d 680, 682 [1, 2]. And the test of res judicata is "whether there is an identity of issues; that a 'former judgment is conclusive in a second suit between the same parties where the same legal right as that involved in the former suit comes again in issue, although the second suit is upon a different cause of action.'" Whiteley v. Whiteley, Mo.App., 325 S.W.2d 502, 505 [3].

■ As previously demonstrated, the parties, and the issues made by the pleadings, are the same in both the federal and state court actions, without any change as to the rights of the respective parties. Under such circumstances, the prior judgment is *res judicata* as to the parties and issues in this proceeding.

With the case in this posture, Varnal v. Kansas City and P. W. Halloran, Mo.App., 481 S.W.2d 575, is directly in point. On September 21, 1967, Mr. and Mrs. Varnal filed a complaint in federal court under U.S.C. Title 42, Section 1983, alleging as a theory of recovery that defendants conducted a campaign of illegal and unconstitutional harassment of plaintiffs under color of local law by threatened arrest, false arrest and imprisonment, unauthorized and illegal search of home, and, accordingly, were entitled to actual and punitive damages. On the same date plaintiffs filed an identical petition in state court, except for deletion of the reference to the Civil Rights Act and minor variations of descriptive language, complaining of the specific tortious acts mentioned in the federal court complaint. Trial of the federal court action resulted in judgment for defendants, and summary judgment was entered against plaintiffs in their state court action on grounds the action was barred by the former judgment in federal court. The question presented was, as in this case, whether the federal judgment is *res judicata* of this action. In determining that the state court action was barred, the court stated: "As heretofore noted, the two causes as pleaded are identical. There has been no showing of any variance between them in any respect. Hence, the same 'material facts or questions' were in issue in both cases as 'a common nucleus of opera-

tive fact.' [(Whirl v. Kern, 5 Cir., 407 F.2d 781, 793 [20].)] Having been judicially determined by a court of plaintiffs' selection, those common issues may not be fissioned [(Whirl v. Kern, supra)] and relitigated in this action. * * * Plaintiffs have had their day in court, with full opportunity to try their state action together with their federal suit as was done in the Whirl case with full approval of the federal court of appeals. The courts of Missouri are not open to litigants under circumstances existing in this controversy." 481 S.W.2d l. c. 580.

■ Appellant also contends the court erred in not granting him permission to appeal as a poor person. In presenting his complaint he recognizes that Rule 77.04, V.A.M.R., in providing for appeal as a poor person, also calls for exercise of judicial discretion. His argument is that Judge Lucas should have accorded appeal to Jackson as a poor person because he had received such benefits "in all other forums."

The transcript of these proceedings shows only a motion to permit appeal as a poor person. There is no showing of indigency as of the time of this appeal. Accordingly, it may not be said on this record that the court abused its discretion in denying the motion to appeal as a poor person.

Respondents' motion to dismiss appeal for failure to comply with Rule 83.05, taken with the case, is overruled.

Judgment affirmed.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.