D. D. ROBERTS v. CHARLES S. DEAN, Sheriff; FRED P. CONE, as Governor, for the use of D. D. ROBERTS, v. CHARLES S. DEAN, as Principal, and W. S. ALYEA, G. A. ALLEN and J. O. EDSON, as sureties on the official bond of Charles S. Dean, Sheriff.

187 So. 571.
Opinion Filed July 6, 1938.
On Rehearing March 3, 1939.
Rehearing Denied April 3, 1939.

422

*Touchton & Crittenden,* for Plaintiffs in Error.
*Lovick P. Williams,* for Defendants in Error.

BROWN, J.—These two cases have been consolidated, as the issues are identical, the only difference being that the

first case is brought against Sheriff Dean, as Sheriff, and the second case is brought against Sheriff Dean, as principal, and Alyea and others, as sureties on the Sheriff's official bond.

. . The lower court sustained demurrers to. the declarations. This appeal is predicated on that ruling. The declarations are in two counts, each of which charges Sheriff Dean with false imprisonment and the allegations are almost identical except that the second counts are couched in trespass on the case, whereas, the first counts are laid in direct trespass.

It is alleged in substance that on July 30, 1935, in Cross City (Dixie County), Florida, a check for $11.00 was delivered to Walter Cooper by D. D. Roberts in the presence of T. Edenfield, a deputy sheriff of Charles S. Dean, Sheriff of Citrus County, Florida, and the plaintiff then and there informed the said T. Edenfield and Walter Cooper that he had insufficient funds on deposit in the drawee bank to pay the check but intended to have sufficient funds in the bank to pay the check on the date it bore—August 5, 1935; that plaintiff at the time of the delivery of said check to Cooper intended in good faith to deposit sufficient funds in the bank before that date; it is further alleged that defendant, through his deputy, T. Edenfield, accepted the check from Cooper as payment of certain court costs; that plaintiff was unable to deposit sufficient funds in the drawee bank. On October 17, 1935, the defendant telegraphed Anderson, Sheriff of Dixie County, "I hold warrant for D. D. Roberts arrest and hold will come for him Friday." T. A. Crews, one of Anderson's deputies, arrested plaintiff and imprisoned him in the county jail until about noon of Friday, October 18, 1935, at which time Anderson, acting as Sheriff of Dixie County, and agent for the defendant Sheriff Dean, served a warrant upon plaintiff, which was

issued out of the County Judge's Court of Citrus County, Florida, and charging the plaintiff as follows: "Whereas Ray Sassard has this day made oath before me that on the 5th day of August, A. D. 1935 in the County aforesaid (Citrus), one D. D. Roberts did pass a worthless check of tenor and effect following, that is to say: (check and its endorsements are here set forth) contrary to the statutes in such case made and provided, and against the peace and dignity of the State of Florida: These are, therefore to command you to arrest instanter the said D. D. Roberts and bring him before me to be dealt with according to law." It is further alleged that the affidavit and warrant failed wholly to charge any crime against the laws of the State of Florida, and that they show upon their face that no crime had been committed in Citrus County, Florida, and that the County Court of Citrus County didn't have jurisdiction over the person or subject matter and said warrant was wholly void upon its face; that on October 18, 1935, the said defendant, by and through his deputy, Ray Sassard, did transport the plaintiff from the jail in Cross City, Florida, to the jail in Citrus County, Florida, and held the plaintiff in jail against his will until October 21, 1935, upon which later date the defendant by and through his deputy transported the plaintiff back to Cross City and released him; that by reason of said false, unlawful and malicious arrest and imprisonment of plaintiff without probable cause, as aforesaid, plaintiff has suffered great damages, etc., wherefore plaintiff brings this suit for $25,000.00.

In order to facilitate a discussion of the questions involved herein, it is expedient to here set forth the pertinent parts of Chapter 8401, Acts of 1921 (Section 7922, 7923 and 7928, C. G. L. of 1927) the statutes upon which the affidavit and warrant were based:

"Section 1. That it shall be unlawful for any person to draw or utter to another any check without there being at the time thereof sufficient funds on deposit or to his credit with the drawee named therein to insure the payment of same upon presentation within a reasonable time after negotiation, provided, that this section shall not apply to any check where the payee or holder has been expressly notified prior to the drawing or uttering of same that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid.

"Section 2. That it shall be unlawful for any person to knowingly utter to another as good any check with knowledge at the time thereof that the drawer of said check is without sufficient funds on deposit with the drawee to insure the payment of same upon presentation within a reasonable time after negotiation.

"Section 7. That in prosecutions had under this Act, the affidavit, information or indictment charging the offense may be in the following form: 'That the said defendant, A. B., in the county and state aforesaid unlawfully did pass a certain worthless check of tenor and effect following, that is to say (here set forth the check verbatim, with all endorsements appearing thereon)' and no other or further particularization shall be necessary, provided, that for good cause being made to appear, the court may require the furnishing of a bill of particulars to the defendant where he would be embarrassed or prejudiced in the preparation of his defense by the generality of the form aforesaid."

Sections 1 and 2 of this Act were designed to apply to different situations. Section 1 applies to the case where a maker draws a worthless check, not having sufficient funds on deposit in the drawee bank. The party comm'tting the

crime contemplated by this section is the drawer or maker of the check. See Williams v. State, 97 Fla. 401, 121 So. 462, where it was held in habeas corpus proceedings that a warrant substantially in the form advocated by Section 7, Chapter 8401, Acts of 1921, did not wholly fail to charge a crime under Section 1 of that Chapter (7922) C. G. L. It is unnecessary to allege that the drawer had knowledge he had insufficient funds in the drawee bank.

Section 2 of this Chapter covers the situation where A utters B's worthless check to a third party. Knowledge that the drawer has insufficient funds on deposit is an essential element of the offense and must be alleged in the warrant. The case of Dowling v. State, 98 Fla. 523, 124 So. 12 is illustrative of a case arising under this Section (Compiled General Laws of 1927, Section 7923). In this case it was held that the warrant, substantially in the form set out in Section 7, as above quoted, was insufficient to charge a crime under this section because knowledge was not alleged.

The warrant and affidavit in the present case under consideration are substantially in the statutory form. As in the case of Williams v. State, *supra,* the word "unlawfully" is omitted from the warrant, but it is alleged that D. D. Roberts passed a worthless check, etc., "contrary to the statutes in such case made and provided." Such a warrant was considered sufficient to charge a crime in that case under Section 7922 C. G. L. (Section 1, Chapter 8401, *supra.*) We are of the opinion that the warrant in present case is likewise sufficient to charge an offense under said Section 7922, and is a valid warrant.

The crime charged by the warrant is "passing a worthless check." It is contended by the plaintiff in error that the warrant shows on its face that the crime was committed in another county, Dixie, because the check is set

out in the warrant and upon the check is "Dixie County
Bank," the drawee, and then follows "Cross City, Florida,
8-5-35." The plaintiff in error overlooks the fact that by
the clear words of the warrant and affidavit it is stated
that "in the County aforesaid" (Citrus County); "one
D. D. Roberts did pass a worthless check of tenor and
effect following." The printed name of the town on the
check is not sufficient to show lack of jurisdiction in the
county court, as against the sworn affidavit. It is an or-
dinary custom of banks, well-known by all who have deal-
ings with them, that the name of the town where the bank
is located is printed upon the checks. This is certainly
not sufficient to establish the county in which the check
was passed or to put one serving such a warrant on notice.

It is further contended that Sheriff Dean was not pro-
tected by the warrant because the declaration alleged that
T. Edenfield, a deputy of Sheriff Dean, had knowledge of
the fact that the crime was committed in another county
and that the drawer of the check had notified the payee
and Edenfield prior to uttering or drawing the check that
he had insufficient funds on deposit at that time to cover
the check.

We are of the opinion that the allegations of the knowl-
edge of the deputy Edenfield are insufficient in this case to
charge the Sheriff with that knowledge and hold him lia-
ble for his actions taken under a warrant, valid on its face,
in the absence of a showing that the sheriff had actual
knowledge of such facts. The rule is found in 24 R. C.
L. 982:

"And though a sheriff and his deputy are, for many pur-
poses regarded as one officer in law, *this rule cannot be ex-
tended so far as to make the sheriff chargeable with notice
of all that has come to the knowledge of any of his dep-
uties;* nor can it be stretched so far as to require impos-

sibilities of the sheriff, or to impose unconscionable exactions."

We do not pass upon the question as to whether or not the deputy who swore out the warrant and his sureties or any other person or persons who caused this to be done, are liable for malicious prosecution. That question is not presented here.

Thus we see that if the plaintiff had been arrested in Citrus County the Sheriff of that County would not have been liable in an action for false imprisonment.

It is alleged, however, that Sheriff Dean sent a telegram to Sheriff Anderson of Dixie County and directed him to arrest Roberts and hold him. The arrest was made by one of Anderson's deputies, without a warrant in his possession, according to the allegations of the declaration.

Section 8203 C. G. L. provides that original jurisdiction in criminal cases is vested in circuit courts, criminal courts of record, county courts, county judge's courts and courts of justices of the peace, and Section 8204 C. G. L. provides that:

"Process. Said courts shall have full power and authority to issue all writs and process necessary or proper to the exercise of the criminal jurisdiction, and such writs and process, except when otherwise provided by law, shall run and be of full force and effect throughout the State." See State, *ex rel.,* v. Fabisinski, 111 Fla. 454, 152 So. 207.

It is further provided by Statute (C. G. L. 9321) that:

"Warrant to run throughout the State. In all cases where a crime shall be committed in this State, and a warrant shall issue to apprehend the offender, such process shall have the same force and effect in another county as it had, or should have had, in the county where it is *issued, if it*

*be endorsed by some judge or justice of the peace living in said other county."* (Italics supplied.)

It appears from the declaration that Anderson, acting as an agent of Sheriff Dean, had his deputy arrest and hold Roberts, and that at the time of the arrest he was not equipped with a warrant from Citrus County endorsed by a judge or justice of peace of Dixie County.

Our statutes authorize the arrest of any person violating the penal laws of this state, in the presence of an officer, without a warrant. It is also the duty of such officer to arrest without warrant and take into custody any person whom such officer has reasonable ground to believe, and does believe, has committed any *felony,* or whom he finds in the act of committing any felony, or about to commit any felony, or engage in a fight or other breach of the peace. See Chapter 4925, Acts of 1901, Section 1 (Comp. Gen. Laws, 8323).

It is necessary for the arresting officer, in this state, to have a warrant in his possession when arresting for a *misdemeanor* not committed in such officer's presence. Therefore, under the allegations of the declaration, the arrest and holding of Roberts for a *misdemeanor,* as here charged, on the receipt of Sheriff Dean's telegram, was not a lawful arrest, and Dean would be liable for the acts of Anderson which were alleged to have been performed at his direction and by his request.

For the purpose of this appeal the allegations of the declarations must be accepted as true, as the demurrers admit all facts well pleaded. Under these allegations it is apparent that defendant Dean was liable for the arrest of Roberts in Dixie County without a warrant as he, being at the time in Citrus County, directed Sheriff Anderson of Dixie County to make the arrest and Anderson was acting

as Sheriff Dean's agent when he had the arrest made by his deputy in Dixie County.

The only remaining question is whether or not the sureties of the sheriff's official bond are liable for these acts of the sheriff. In 46 C. J. 1068-9, it is said:

"Liability upon an official bond arises as a rule only with reference to acts of the officer which pertain to some function or duty which the law imposes upon his office. Thus sureties are not liable for a purely personal act of an officer not done as a part of, or in connection with, his official duties; and where he acts without any process and without the authority of his office, or under a process void on its face in doing such act, he is not to be considered an officer but a personal trespasser. The sureties upon an official bond, are, however, liable for an abuse of the authority vested in the principal, and where an officer acts under lawful process, his sureties will be liable for injuries resulting from his negligence or wilfulness in the execution thereof."

"In some cases it is laid down as a general proposition that sureties on an official bond are only liable for acts of the principal done by virtue of the office, and cannot be held responsible for acts done merely by color of office. In other cases the distinction has been repudiated, and the more general rule would seem to be that for improper acts performed by an officer under color of his office, the sureties upon his bond can be held liable, although this rule is subject to the qualification that in order to constitute color of office such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that in doing the act complained of the officer claimed to be acting in an official capacity."

It has been held that an arrest without a warrant for a misdemeanor not committed in view of the officer is not a

breach of the officer's bond because such an arrest is not under color of the office, although the officer thought he was acting officially, and although he was personally liable for his misconduct. People, for use of Tamplin, v. Beach, 49 Colo. 516, 113 P. 513; State v. Dierker, 101 Mo. A. 636, 74 S. W. 153. If this is good law, by analogy it might well be argued that the official bondsmen of Sheriff Dean are not liable on the bond for this usurpation of power on the part of the sheriff, if indeed it was nothing more than that. He had no lawful authority to order or cause an arrest in another county for a misdemeanor without securing, or having secured, a properly endorsed warrant and having it in the hands of the arresting officer at the time of the arrest in such other county. This much must be conceded. The warrant in the hands of Sheriff Dean, who at the time was in his own county, was of no effect in Dixie County, unless and until it had been taken there and properly endorsed, as required by the statute.

In 57 C. J. 1013-1014, it is said:

"As a general rule, the official bond of a sheriff or constable imposes liability only for what the officer unlawfully does or omits to do in the execution of his office or of some official duty imposed by law, and does not cover any act or omission done without authority of law or in his private or personal capacity as a man or citizen, or an act constituting a mere abuse or usurpation of power and done without process of any kind. It is ordinarily held that the sureties are liable for a wrongful act done by an officer under color of office, although not by virtue thereof, but there is authority for the view that their liability extends only to acts done by virtue of the office and not to acts done merely under color of office."

The bond required of sheriffs in this state is conditioned "for the faithful performance of the duties of his

office" (C. G. L. 4568). In Cassady v. Sholtz, 124 Fla. 718, 169 So. 487, this Court said:

"An official bond binds the sheriff no further than he would be liable without it. The sole object of the bond is to secure the faithful performance of official duty. And no official act can be considered a breach of the condition of the bond to faithfully execute the duties of the office, unless it would, without bond, amount to a breach of official duty. See Studebaker v. Johnson, 41 Kan. 326, 21 Pac. 271, 13 A. S. R. 287; Forsyth v. Ellis, 4 J. J. Marsh (Ky) 298, 20 Am. Dec. 218.

" 'Generally speaking, the purpose of an official bond is to provide indemnity against malfeasance and misbehavior in public office, the misuse of powers belonging to the office, and the assumption, under guise of official action, of powers not belonging to it. All acts so performed, though unlawful or wrongful, are official acts within the meaning of an undertaking that an officer shall faithfully and impartially discharge the duties of his office; and as such may be reasonably considered to have been within the contemplation of the sureties at the time they entered into the undertaking, as constituting a breach of its conditions.' 24 R. C. L. 956, Sec. 50."

So the question arises whether the facts alleged in the declaration show that the sheriff was acting as an individual, and for personal ends, not as an official; or, if attempting or appearing to act officially, did he usurp authority and go so far outside the scope of his official powers as to render him liable for his acts only as an individual, and for which acts his sureties on his official bond would not be liable? Or did he, to follow the language used in the Cassady case, *supra*, misuse the powers belonging to his office, by assuming to exercise, under the guise of official action, powers not belonging thereto, thus

rendering both himself and his bondsmen liable? "All acts so performed," says the language approved in the Cassady case, "though unlawful or wrongful, are official acts within the meaning of an undertaking that an officer shall faithfully and impartially discharge the duties of his office, and as such may reasonably be considered to have been within the contemplation of the sureties at the time they entered into the undertaking."

In a case involving the liability of a sheriff for the acts of his deputies, Swenson v. Cahoon, 111 Fla. 788, 152 So. 203, there is an interesting discussion by Mr. Justice TERRELL of the distinction between the abuse of power, and the usurpation of power. In that case, among other things, it was said:

"The rule seems settled by the decided weight of authority that in the absence of statute to the contrary only those acts of a deputy that involve an abuse of power imposed in him and not those involving a usurpation of power will the sheriff be required to answer for.

"In other words, in order to render the sheriff liable for the act of his deputy, the act must be done by virtue of his office as a deputy, and in order that it have that character it must be committed *in an attempt to serve or execute a writ or process and as a means to that end,* or in acting under a statute giving him the right to arrest without a warrant, otherwise he is acting as an individual." (citing authorities.)

"The act of the deputy in the instant case, if proven, was reprehensible, but it was a clear usurpation of power, and such responsibility as may be charged against the sheriff for it is a personal one."

In Hall v. Tierney, 89 Minn. 407, 411, 95 N. W. 219, it was observed that: "The distinctions originally made

between acts done by virtue of office and acts done by color of office has been entirely disregarded by leading authorities within the past few years."

While the question is a rather close one, we are clearly convinced that, when the principles enunciated in our two previous cases, the Cassady case and the Swenson case, are applied to the facts as alleged in these two declarations, each of the declarations states a cause of action, and that the demurrers thereto should have been overruled.

It does not appear from the facts alleged that the defendant sheriff was acting purely in his individual capacity, or for personal reasons, or to attain personal ends. On the other hand, it appears that said sheriff had in his hands for service a warrant, valid on its face, charging plaintiff Roberts with a misdemeanor, and that in doing what he did, and which act is complained of in the declaration, he was attempting to execute the command of the writ in an unlawful way; that is, by telegraphic order to the sheriff of a neighboring county to arrest and hold the accused person named in the warrant and hold him until he, the defendant sheriff, could send for him the following day. So, however mistakenly and unlawfully he may have acted, he was manifestly attempting to execute the court's writ or warrant, valid on its face, which it was his duty to execute; but which it was also his duty to execute in the manner provided by law, as hereinabove pointed out, by placing the warrant itself, duly endorsed by a judge or justice of the peace of Dixie County, in the hands of the arresting officer. As it was, according to the allegations, he caused the arrest of the accused for a misdemeanor, by an officer in Dixie County who did not have the warrant, either endorsed or unendorsed. Thus, ac-

cording to the allegations, in attempting to execute the warrant, he brought about the unlawful arrest and imprisonment of the plaintiff.

Therefore the court below erred in sustaining the demurrers to the respective declarations and in rendering judgments thereon in favor of the defendants below, in both of these cases, and both judgments are accordingly reversed, and both causes remanded for further proceedings consistent with the views hereinabove expressed.

Reversed and remanded.

WHITFIELD and BUFORD, J. J., concur.

CHAPMAN, J., dissents.

CHAPMAN, J. (dissenting).— I cannot agree to the majority opinion in this case. If the majority opinion here is to prevail, the Sheriffs of Florida in executing criminal process in misdemeanor cases, and the individuals charged with crime, have a tremendous advantage over the law enforcing officers of this State and the average citizen of Florida, which I do not believe was ever intended by the Legislature. While it is true that the warrant under the statute must be endorsed by a proper officer, nevertheless such criminal process runs throughout the State of Florida as provided by Section 8321 C. G. L. When the plaintiff in this cause was arrested by the Sheriff of Dixie County, Florida, upon the request of the Sheriff of Citrus County, Florida, the warrant for his arrest was then in existence and in possession of the Sheriff of Citrus County, Florida, and under Section 8321 C. G. L., had the same force and effect in Dixie County as in Citrus County. The Dixie County Sheriff was fully authorized to arrest the plaintiff under this warrant in Dixie County the same as if issued in Dixie County, or the Sheriff of Citrus County to have arrested the plaintiff under the warrant issued in Citrus

County had the plaintiff been in Citrus County at the time of its issuance rather than in Dixie County.

It appears that the endorsement of the warrant by a Judge or Justice of the Peace of Dixie County, Florida, could have been done at any time prior to plaintiff's removal from Dixie County and the spirit and meaning of the statute, *supra,* would have been complied with. I think the order of the lower court in sustaining a demurrer to the declaration and the entry of a final judgment for the defendant were proper and should be affirmed.

## On Rehearing

Thomas, J.—The facts alleged in the declaration filed by D. D. Roberts against Charles S. Dean, as Sheriff of Citrus County, and by Fred P. Cone, as Governor, for the use of D. D. Roberts, against Charles S. Dean, as principal, and the sureties on his official bond as Sheriff of Citrus County, are that a warrant was issued on October 16, 1935, by the County Judge of Citrus County, Florida, commanding the sheriff or any constable of the County to arrest D. D. Roberts for uttering a worthless check, and that on the following day Charles S. Dean, Sheriff of Citrus County, telegraphed F. L. Anderson, Sheriff of Dixie County, as follows:

"I HOLD WARRANT FOR D. D. ROBERTS ARREST AND HOLD WILL COME FOR HIM FRIDAY."

The addressee of the telegram caused D. D. Roberts to be arrested and imprisoned in the county jail at Cross City, Florida, on October 17, and the following day a deputy of the Sheriff of Citrus County transported the prisoner, D. D. Roberts, in custody from Cross City to Inverness.

Demurrers to the declarations were sustained and judgment entered thereon, forming the basis of this appeal.

The parties to the controversy have elected to consolidate the cases because they grow out of the same transaction; however, we will consider them separately for the reason that we believe the plaintiffs should not recover in either case, but for different reasons.

It is lawful for any sheriff or his deputy to arrest without warrant any person who violates any penal code of the State in his presence, and it is the duty of such officer to arrest without warrant any person "whom such officer has reasonable ground to believe * * * has committed any felony, or whom he finds * * * committing * * * or about to commit a felony." Section 8323 C. G. L. 1927.

The offense charged in the warrant was a misdemeanor not committed in the presence of the arresting officer, viz.: the sheriff of Dixie County, therefore any authority to arrest was confined to the warrant. That officer apprehended D. D. Roberts because of a telegram received from the Sheriff of Citrus County, who then had in his hands for service a warrant issued by the authorities of the latter County.

Warrants have the same force and effect in counties other than the one in which they originated *if* they are "endorsed by some judge or justice of the peace living in said other county." Sec. 8321 C. G. L. 1927.

The statute, with reference to the indorsement of warrants, was originally by the Legislative Council of the Territory of Florida more than one hundred years ago, and, of course, at the present time the required indorsement is a great handicap to officers in apprehending persons who have committed acts denounced as misdemeanors and who have moved or fled beyond the county where the warrant originated. With our modern means of transportation and system of highways it would be possible for any such offender to pass not only into another county,

but even into another state, while an officer was obtaining indorsements of judges or justices of the peace in order to clothe him with the authority to arrest. Thus is made available to the offender the means of swift transportation, while by the proviso the officer is denied the advantages of speedy communication.

The Court is fully sensible of the awkwardness of such requirement, nevertheless, the situation is one which it is not within our province to correct. The Court is charged only with the interpretation of the law, and cannot undertake to amend a law which may by changed circumstances appear to have become impracticable or obsolete.

The bond of the Sheriff bound him no further than he would have been obligated without it.

In Cassady v. Sholtz, 124 Fla. 718, 169 South. Rep. 487, appears the following expression on the subject:

"An official bond binds the sheriff no further than he would be liable without it. The sole object of the bond is to secure the faithful performance of official duty. And no official act can be considered a breach of the condition of the bond to faithfully execute the duties of the office, unless it would, without bond, amount to a breach of official duty." 124 Fla. text 721.

" 'Generally speaking, the purpose of an official bond is to provide indemnity against malfeasance and misbehavior in public office, the misuse of powers belonging to the office, and the assumption, under guise of official action, of powers not belonging to it. All acts so performed, though unlawful or wrongful, are official acts within the meaning of an undertaking that an officer shall faithfully and impartially discharge the duties of his office; and as such may be reasonably considered to have been within the contemplation of the sureties at the time they entered into the

undertaking, as constituting a breach of its conditions.' 24 R. C. L. 956, Sec. 50.

"'Hence it is that sureties for an officer are liable only in the event of his failure to perform his duty; and the obligation they assume refers only to such liabilities as arise within the fair intendment and meaning of the obligation itself. It is not an engagement for general good behavior on his part aside from such official duty; neither is the bond of a sheriff liable at the suit of third persons unless the officer is expressly bound thereto by the duty of his office. The reason for this is that while a sheriff owes a twofold duty, one to the public and one to private individuals who are concerned in the execution of civil and quasi-civil process, and is liable upon his official bond for a breach of such duty, the duty in either event must be direct; the cause of action must result to the party injured; and it must operate as a deprivation of an existing right.' 24 R. C. L. 957, Sec. 51." 124 Fla., text 722.

The rule enunciated in State v. Dierker, 101 Mo. App. 636, 74 S. W. Rep. 153, points out the distinction between the abuse and usurpation of authority by a sheriff.. It was said there that the arrest without process by a peace officer of a person charged with a misdemeanor was a usurpation of power and not within contemplation of the bondsmen who gave security for his official behavior.

In People v. Beach, 49 Colo. 516, 113 Pac. Rep. 513, the decision was that there could be no recovery against the sheriff's bondsmen for injury resulting from the shooting of a prisoner by a deputy in the absence of direct allegations that there was a lawful arrest and that the deputy's acts were of an official character.

We have recognized this doctrine by declaring in Swenson v. Cahoon, 111 Fla. 788, 152 South. Rep. 203, "We think there is a clear distinction between the abuse and the

usurpation of the power imposed (*sic*) in a deputy sheriff." 111 Fla. 793, text.

We quote, too, this excerpt from the same opinion:

"In other words, in order to render the sheriff liable for the act of his deputy, the act must be done by virtue of his office as a deputy, and in order that it have that character is must be committed in an attempt to serve or execute a writ or process and as a means to that end, or in acting under a statute giving him the right to arrest without warrant, otherwise he is acting as an individual." 111 Fla. text 790-791.

See also Rich v. Graybar Electric Co., 125 Tex. 470, 84 S. W. Rep. (2d) 708, 102 A. L. R. 171, and annotation at page 188.

The warrant was without efficacy in Dixie County and the authority of the sheriff who held it was confined to Citrus County, (57 C. J., Sheriffs and Constables, Sec. 125, p. 775), hence, applying the rules above enunciated, there was no liability against his sureties.

It is alleged that one sheriff appointed the other his agent. We believe that a sheriff's "agents" are his deputies whose authority as to territory coincides with his and that he cannot appoint one who holds the same office in another area to serve in a representative capacity in the latter's domain. Upon indorsement of a warrant, but not until then, the latter officer is empowered to act upon it and the contention is unsound that meanwhile he may serve as the "agent" of the former. There is therefore no liability on the part of Charles S. Dean, as Sheriff, for the deed of F. L. Anderson in apprehending plaintiff in error.

It is borne in mind that after the incarceration of plaintiff in error a deputy was sent to escort him back to Inverness, but at that time custody was transferred to one who was armed with a warrant authorizing arrest.

For the reasons given, the previous opinion is adhered to except where inconsistent herewith and the former judgments of reversal are vacated and set aside and the judgments of the Circuit Court are affirmed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD and BROWN agree to the original opinion filed herein.

CHAPMAN, J., agrees to judgment of affirmance.

CHAPMAN, J.—I think the judgment appealed from should be affirmed for the reasons stated in my dissenting opinion filed simultaneously with the original opinion of reversal adopted by the Court.

BROWN, J. (dissenting).—While I adhere to my original opinion in this case, I fully agree with Mr. Justice THOMAS that, under present conditions, the requirement of Section 8321, as to the endorsement of warrants served in some other county by some judge or justice, of such county, is highly impractical and imposes an unnecessary handicap upon law enforcement officers. But we have no power to repeal this statute or any part of it. That must be left to legislative action. Section 8323 C. G. L. provides a different rule in felony cases. But we are here dealing with an arrest for a misdemeanor. There is no contention made that Dr. Roberts was trying to escape. I think, therefore, that our original opinion and judgment should be adhered to for the reasons set forth in said opinion.