305 So.2d 314 (1974)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DIVISION OF RETARDATION, Appellant,
v.
David Leon OWENS et al., Appellees.
Nos. V-65 to V-72.
District Court of Appeal of Florida, First District.
December 31, 1974.
James G. Mahorner, Tallahassee, and Jean, Laramore, State of Fla. Dept. of Health & Rehabilitative Services, Tallahassee, for appellant.
Don Peters, Gainesville, for appellees.
Beverly A. Rowan, Miami, Joseph P. Kennedy, Jr., and Bruce S. Rogow, Coral Gables, for amicus curiae.
McCORD, Judge.
These are appeals from orders of the Circuit Court of Alachua County, Florida, in eight cases (consolidated on appeal) brought by the State of Florida Department of Health and Rehabilitative Services. The order appealed from in each case granted the petition for involuntary *315 admission of the appellee in that case to the Division of Retardation of the Department of Health and Rehabilitative Services. The various orders also directed appellant to provide certain prescribed treatment for the several appellees and to perform other acts at the discretion of the court.
The issues presented on appeal are:
1. Whether or not the admitting judge had statutory authority to prescribe the type of treatment to be administered to an individual involuntarily admitted to the Division of Retardation under Chapter 73-308, Laws of Florida (Chapter 393, Florida Statutes).
2. Whether or not the order issued by the admitting judge was an unconstitutional interference with the separate executive function contemplated by Article II, Section 3, of the Florida Constitution.
These appeals are resolved under the first issue and we, therefore, do not reach the second issue. To bring this issue into proper focus, we quote below the directions given to appellant in each order for involuntary admission:
Case No. V-65
"1. That he be taken by said Division of Retardation to the Shands Teaching Hospital for a complete neurological work-up, to include a sleep EEG.
2. That expense of said tests be paid by the Division of Retardation.
3. That Sunland Training Center notify the parents of DAVID LEON OWENS when appointment has been made for said tests.
4. That the results of the said tests be made known to the Examining Committee for their further evaluation and consideration prior to making a permanent disposition of DAVID LEON OWENS. All of the above shall be completed on or before sixty (60) days from the date of this order. This matter shall be brought back before the Court on or before March 15, 1974, on the issue of permanent disposition ..."
Case No. V-66
"1. That he be released to a proper Community Living Home just as soon as one found available in this area. Provided, however, that if placement not within thirty (30) days from the date of this order, he shall be completely discharged from the Division of Retardation on or before July 1, 1974.
2. In the event, in the opinion of the Director of the Division of Retardation, there are an insufficient number of Community Living Homes in the Gainesville, Florida, area, properly accredited by the A.A.M.D., he is directed to establish said Community Living Homes within thirty (30) days from this Order and make these services available to the said FRANKIE LEE MYHAND."
Case No. V-67
"1. That the proper evaluations as recommended by the Examining Committee be made within the next three months.
2. The Division of Retardation is directed to make a survey of the West Palm Beach area to determine the availability of services in that area for RICHDEAN LOUISE HATCHETT. The findings should be made known to the Examining Committee, and if said Examining Committee recommends to the Court that placement be in that area, this will be done without formal hearing.
3. In the event no available services in the West Palm Beach area which can be coordinated by the Division of Retardation to meet the recommendations of the Examining Committee, this matter will be brought back before the Court upon *316 recommendation of the Examining Committee for long term treatment."
Case No. V-68
"1. That the Division of Retardation afford psychiatric counseling for JOHN ALAN JOHNSON.
2. That he be placed in a work evaluation training program such as offered by Santa Fe Junior College.
3. That upon completion of the work evaluation training program, he be released into a Community Living Home.
It is to be understood the work evaluation training program is to commence as soon as possible and in the event JOHN ALAN JOHNSON has not been released into the Community Living Home within six (6) months from the date of the signing of this Order, this matter shall be brought back before the Court on or before July 15, 1974."
Case No. V-69
"1. * * *
2. That the appropriate department or departments of the State Department of Health and Rehabilitative Services is hereby ordered to implement the recommendations of the Examining Committee to their fullest extent within thirty (30) days from the date of this order. In the interim the said PAUL VARNEY is to remain at Sunland Training Center for a period not to exceed sixty (60) days, and at that time be discharged without further order of this Court.
3. The Division of Retardation is directed to obtain from the Shands Teaching Hospital, Department of Orthopedic Surgery, Department of Physical Therapy, Department of Communicative Disorders, Department of Neurology, a complete evaluation and recommendation for therapy for the various specified physical imperatives of PAUL VARNEY. (Expense for said evaluations to be paid by the Division of Retardation of appropriations other than from Sunland Training Center.)
4. This evaluation is to be completed within thirty (30) days or sooner, as scheduling permits. Results of said evaluations shall be forwarded to Mr. O.J. Keller to be implemented by the proper agencies within thirty (30) days thereafter.
5. In the event said services are not implemented in full for the said PAUL VARNEY, this matter shall be brought back to the attention of the Court."
Case No. V-70
"1. That she be released to an accredited Community Living Home for women, properly supervised and accredited by the A.A.M.D., within a period of three months from this date.
2. In the event she is not suitably placed by March 15, 1974, the Court directs the Division of Retardation to bring the matter back before the Court for hearing, at a date and time to be set by the Clerk of the Circuit Court.
3. That NADINE GOWEN CARTER be provided tutoring and training in simple arithmetic, handling of money, and other fundamentals necessary in maintaining an independent life.
4. The Court accepts the recommendation of the Examining Committee that she needs someone on a one-to-one basis to give her the necessary training and supervision. Wherefore, the Division of Retardation is directed to contact the Citizen Advocacy Co-Ordinator, Roberta Malavenda, toward this end."
Case No. V-71
"1. That WENDY CAROLYN DAVIS be released to an accredited Community Living Home, wherever there is an available opening, for a period of ninety (90) days.
2. That she be afforded Vocational Rehabilitation counseling and training and *317 counseling by the Mental Health Association as recommended by the Examining Committee.
3. That at the end of ninety (90) days in the Community Living Home, this matter be brought back before the Court for further evaluation."
Case No. V-72
"1. * * *
2. The petition for Paula Earline Carroll's involuntary admission to services provided by the Division of Retardation is granted and the recommendations of the Examining Committee as set out in Paragraphs 3 and 4 above shall be carried out.
3. * * *
4. If the Division of Retardation shall determine at a time subsequent to the placement in a group living home that such placement is not in the best interests of Paula Earline Carroll, the Director of Region III shall so certify in writing and file his certificate with the Court after furnishing a copy to the office of the Public Defender. After consultation with Paula Earline Carroll and within ten days of the receipt of such certificate, the Public Defender or his representative may petition the Court to reopen the question of involuntary commitment.
5. In the event Paula Earline Carroll is in the custody of the Division of Retardation but has not been placed in a satisfactory group living home by May 1, 1974, the Public Defender or his representative after consultation with Paula Earline Carroll shall petition the Court to reopen the question of involuntary commitment and for the proper official of the Department of Health and Rehabilitative Services to show cause why this Order has not been complied with.
6. This Court retains jurisdiction of this cause to enter such orders as may be appropriate from time to time."
We are unable to find that the Legislature, by the statute governing involuntary admission by the court of a person to a residential program provided by the Division of Retardation, has authorized the court to issue supervisory and directory orders such as those issued in this case and partially quoted above. In fact, the statute indicates otherwise. Subsection (2) of Section 393.01, Florida Statutes, provides as follows:
"Any person voluntarily or involuntarily admitted to a residential program provided by the division of retardation shall become the responsibility of the division of retardation until discharged or released to the custody of a parent or guardian. The division shall assign the person to an appropriate residential program as it may deem proper. By rules and regulations, the division shall also provide for the transfer of such persons between residential facilities or services." (Emphasis supplied)
Subsection (1) of Section 393.11, Florida Statutes, states as follows:
"(1) When a person is retarded and requires involuntary admission to residential services provided by the division of retardation, the circuit court of the county in which the person resides shall have jurisdiction to conduct a hearing and enter an order involuntarily admitting the person."
Subsection (2) provides the procedure for involuntary admission and under this procedure the statute provides that:
"The court shall appoint, no fewer than three disinterested experts qualified in the field of mental retardation, including at least one licensed and qualified physician, one licensed and qualified psychologist, and one qualified social worker, to examine the applicant and to testify in person at the admission to residential care hearing." [portion of paragraph (b)]
*318 It further provides:
"If there is not a practicing psychologist within the county who meets the above standards, the judge may appoint one additional physician to be a member of the examining commission." [portion of paragraph (b)]
The statute further provides that:
"Such expert testimony shall include, but not be limited to: the degree of the applicant's retardation; the purpose to be served by residential care; and the appropriate habilitation and treatment." [portion of paragraph (b)]
It further provides that:
"Other evidence regarding the appropriateness of the applicant's admission may be introduced at the hearing by any interested party." [portion of paragraph (b)]
The statute in addition provides:
"In all cases, the court shall issue findings to support its decision and the basis for such findings." [portion of paragraph (c)]
Subsection (3) of said statute provides for appeal from a final order in the judicial admission proceedings.
Subsection (2)(e) of said statute provides as follows:
"If the examining commission finds the examined person to be in need of admission to residential services of the division of retardation, these findings shall be reported to the court. The court shall then either discharge the person or involuntarily admit the person to the division. The order of involuntary admission to residential care shall be accompanied by the report of the examining commission and copies of any other records that may be required by the division. Upon receiving the order and records, the division shall inform the court of the availability of services for the person."
Subsection (1) of Section 393.05, Florida Statutes, (as amended in 1973) provides the procedure for discharge after admission to residential care. Paragraph (d) of that subsection provides as follows:
"Nothing in this section shall in any way limit or restrict the resident's right to a writ of habeas corpus or the right of the division to transfer a resident receiving residential care to a program of appropriate services provided by the department where such is the appropriate habilitative setting for the resident."
Appellees contend that this statutory procedure authorizes judicial participation in the formulation and implementation of individual treatment programs. Appellees have cited Donaldson v. O'Connor, 493 F.2d 507 (U.S. Court of Appeals, Fifth Circuit, 1974) and other federal court decisions and argue that these decisions have recently established that federal and state constitutional guarantees of due process mandate protections when a citizen is institutionalized for mental illness or retardation and contend that the legislature, anticipating and responding to this development, enacted the statutes here under consideration which were designed to afford due process to Florida citizens before they could be committed or recommitted because of mental retardation; that in its design the legislature authorized a degree of judicial participation in the formulation and implementation of individual programs entirely consistent with the conduct of the court below.
We have no doubt but that the legislature through the statutory procedure outlined above, fully intended to afford due process to individuals before they could be involuntarily admitted to residential care by the Division; but as far as the admission procedure is concerned, the statute goes no further than to set forth the requisites for involuntary admission. The admitting judge determines from the evidence presented to him whether or not he shall issue an order admitting or an order *319 declining to admit the individual and this order is, of course, appealable. The statute does not authorize the court in such order to direct the treatment that is to be furnished by the Department or by its order to supervise the treatment and placement of the individual. Subsection (2) of Section 393.01, supra, specifically provides that the person involuntarily admitted to a residential program provided by the Division shall be the responsibility of the Division until the individual is discharged or released to the custody of parent or guardian and that the Division shall assign the person to an appropriate residential program as it may deem proper. The statute [Section 393.11(2)(e), supra] provides that the order of involuntary admission to residential care shall be accompanied by the report of the examining commission and copies of any other records that may be required by the Division. The statute does not authorize the court in the admission order to direct that this report of the examining commission be implemented. Had the legislature intended such, it would have so stated. To read more into the statute than is there would amount to judicial legislation. Since the legislature provided that the report of the examining commission and copies of any other records that may be required by the Division accompany the judge's order, the legislature evidently intended that such report and other records only be advisory to the Division and not mandatory. As this court stated in Walker v. United States Fidelity & Guaranty Co., Fla.App., 101 So.2d 437:
"This court is charged only with the interpretation of the law. It cannot subtract from or amplify the terms of a statute. Such changes are for the Legislature. Cone for the Use of Roberts v. Dean, 136 Fla. 421, 187 So. 571; Nolan v. Moore, 81 Fla. 594, 88 So. 601; Dutch v. Palm Beach Bridge Dist., 84 Fla. 504, 94 So. 155; State ex rel. Claar v. Branning, 85 Fla. 61, 95 So. 237; Kennedy v. City of Daytona Beach, 132 Fla. 675, 182 So. 228."
Paragraph (e) of Subsection (2) of Section 393.11 quoted above provides that "[u]pon receiving the orders and records, the division shall inform the court of the availability of services for the person." If the legislature had intended that the court in its order direct appellant to provide specific services to an involuntarily admitted person, it would not have directed that appellant inform the court of the availability of services after it had entered its order.
In the cases sub judice arising in Alachua County, each examining commission appointed by the court could properly be termed a "blue ribbon" commission, as it was composed of experts of the well known and highly regarded Shands Teaching Hospital. Their recommendations should be helpful to appellant. Not all counties of the state have available for appointment to examining commissions such experts, and if appellant is to be subject to court orders that it follow recommendations of every examining commission in the state in each involuntary admission case before the various circuit courts, and if placement and treatment by appellant is to be supervised and prescribed by court order, such should be clearly specified by the legislature.
The legislature, in Section 393.05(1)(d), supra, has called attention to the fact that there is no limitation or restriction upon the involuntarily admitted person's right to writ of habeas corpus. After admission, the resident can, of course, seek writ of habeas corpus if the Division is not furnishing adequate or proper treatment and the question of whether or not such resident's constitutional rights are being infringed will be a proper question at such time; but we cannot assume on appeal from an order of involuntary admission that appellant will violate the individual's constitutional rights.
Reversed and remanded for the entry of orders of involuntary admission in each case in conformity with this opinion.
*320 RAWLS, C.J., concurs.
BOYER, J., dissents.
BOYER, Judge (dissents).
I would affirm. It is clear that the Legislature did not intend for the judge to operate in a vacuum. He is required to conduct hearings and issue findings of fact to support his decision. There are many and varied conditions which will give rise to an order of involuntary admission. If the judge finds that a person should be admitted because of a specific condition and for treatment of that specific condition it would, in my view, constitute a deprivation of due process to require the judge under such circumstances to issue a blind order of admission without requiring the specific treatment for which admitted. The whole tenor of the law here under scrutiny is to provide that the judge, based upon proper evidence, determine the condition and needs of the person sought to be admitted, make findings of fact and admit based upon such condition and for the purpose of receiving appropriate treatment. If a person is not to be treated for the condition for which he is admitted then there should be no admission. If the judge has the power, duty and responsibility of admission then he should, and in my view does, have the power, duty and responsibility of asserting appropriate treatment as a condition of admission. The legislative authority, indeed mandate, to hold hearings, hear expert testimony as to the degree of the applicant's retardation, the purpose to be served by residential care and the appropriate rehabilitation treatment and to thereafter issue findings of fact, makes it incumbent upon the judge to enter an order responsive to such legislative authority and mandate. In my opinion the judge would be derelict were he to enter an order of admission and then stick his head in the sand, as the proverbial ostrich, blind to the consequences of the order. The judge entering the orders involved in the cases sub judice has carefully followed the requirements and spirit of the legislative enactment and instead of entering a bland stereotype order has thoroughly discharged his duties required under the act. He is to be commended. I would affirm.