Mr. Phillip Fusilier Chief of Police Havana Police Department Post Office Box 1068 Havana, Florida 32333
Dear Chief Fusilier:
This is in response to your request for an opinion on substantially the following question:
 ARE LAW ENFORCEMENT OFFICERS AS DEFINED BY s 943.10, F.S., AUTHORIZED BY CH. 83-147, LAWS OF FLORIDA, TO ADMINISTER OATHS TO, AND ATTEST TO THE SIGNATURES OF, PERSONS SIGNING THE FOLLOWING DOCUMENTS:
 a. COMPLAINTS OR AFFIDAVITS THAT WILL FORM THE BASIS FOR THE PROSECUTION OF MISDEMEANOR VIOLATIONS OR FOR THE ISSUANCE OF ARREST WARRANTS FOR FELONY AND MISDEMEANOR VIOLATIONS?
 b. PROBABLE CAUSE AFFIDAVITS SUBMITTED TO A MAGISTRATE AT A NONADVERSARY PROBABLE CAUSE HEARING?
Section 1, Ch. 83-147, Laws of Florida, states in relevant part:
 All law enforcement and correctional officers as defined in s. 943.10 may administer oaths, to witnesses, in connection with the taking of a sworn statement during a criminal investigation in connection with their official duties for law enforcement purposes only. (e.s.)
The section goes on to provide that making a material false statement under oath to an officer is punishable as a first degree misdemeanor.
You included with your letter copies of two standard printed forms used by your office. One is a three-part form consisting of a complaint with a separate place to list the name and address of state witnesses, a warrant and a return of writ which you stated is used as the basic charging document in a misdemeanor prosecution and as the basis for the issuance of an arrest warrant for felony and misdemeanor violations. The other document, styled a "Summary of Offense and Probable Cause Affidavit," is generally used at "first appearance" nonadversary probable cause hearings to allege the existence of probable cause to hold an accused for trial on both felony and misdemeanor counts. It is usually signed by a police officer. You asked whether it is proper for law enforcement officers, pursuant to Ch. 83-147, Laws of Florida, to administer oaths to complainants signing the complaint form and to attest to the signature, or execute the required jurat, in lieu of a judge, an assistant state attorney or a notary public. The same question holds for the probable cause affidavit, although it appears from the form and from telephone conversations with you that the person to be sworn, like the person administering the oath, would be a law enforcement officer.
The first question to arise is whether these two documents could be regarded as sworn statements of witnesses taken during a criminal investigation. I have not found any Florida decisions or statutes defining the term "criminal investigation" or the word "investigation." The word "criminal" as used in s 925.095, F.S. 1983, is an adjective describing and modifying the noun "investigation" and the term "criminal investigation" in the instant context relates and has reference to an investigation which pertains to or is connected with the law of crimes. See, Black's Law Dictionary 447 (Rev. 4th ed. 1968). Other authorities have defined "investigation" or "to investigate" as:
 To follow up step by step by patient inquiry or observation; to trace or track mentally; to search into, to examine and inquire into with care and accuracy; to find out by careful inquisition; examination; the taking of evidence . . . .
Black's Law Dictionary 960 (Rev. 4th ed. 1968). See also, 48A C.J.S. Investigation p. 214, where investigation is defined as "the process of inquiring into or tracking down through inquiry; the action or process of searching minutely for truth, facts, or principles. . . . [A] patient inquiry into and examination of all reasonably available facts." It has been said that "[a]n investigation is `essentially informal, not adversary'; it is `not required to take any particular form.'" Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees v. Association for the Benefit of Non-Contract Employees (No. 138), 380 U.S. 650, 662 (1965). See also, Bowles v. Baer,142 F.2d 787, 788 (7th Cir. 1944), in which the court said, "[i]nvestigations are informal proceedings held to obtaininformation to govern future action and are not proceedings inwhich action is taken against anyone" (e.s.); and Atchison, Topeka and Santa Fe Railway Company v. Kansas Commission on Civil Rights,529 P.2d 666 (Kan. 1974). Cf., In re Securities and Exchange Commission, 14 F. Supp. 417, 418 (S.D.N.Y. 1936) in which the court, distinguishing an investigation from a hearing, said, "[a]n investigation, on the other hand, is informal, preliminary, and usually private. It is conducted to determine whether grounds exist for taking more formal proceedings. There are no parties in any substantial sense, no definite issues."
These cases involved disputes in civil administrative matters generally, but the distinction between an informal investigation and other more formal proceedings before a judicial body also appears to exist in the criminal law. For example, in Lindsay v. Allen, 82 S.W. 648, 649 (Tenn. 1904), the court said:
 The words "trial," "hearing," "proceeding," and "investigation" are all terms that pertain to proceedings of a criminal nature, and mark the different steps in a criminal prosecution. Thus, "proceeding" and "investigation" relate to proceedings and investigations before a grand jury when the state is proceeding by indictment or presentment; the words "trial" and "hearing" may relate to the trial of the cause upon final hearing or to the preliminary hearing before the committing magistrate. . . . (e.s.)
It appears from the preceding decisions that an investigation, including a criminal investigation, is an informal inquiry into the facts outside the bounds of a court, generally taking place before formal action has been instituted against someone.
From an examination of the statutes and rules of criminal procedure governing proceedings in a county court, for the issuance of arrest warrants, and in probable cause hearings, it appears that the complaint and the affidavit are used more to focus the machinery of the criminal justice system against a particular individual than to gather facts during an inquiry.
A discussion of the role played by the complaint form is somewhat complicated by the fact that the statutes and rules concerning the prosecution of cases in the county court and applications for arrest warrants both use the word "complaint" or a variation to describe the document that starts off both processes. For example, s 34.13(4), F.S., provides for the commencement of a prosecution by issuance of a warrant for a misdemeanor in the county court by a "complaint made on affidavit." (Compare, s 15, Art. I, State Const., which requires prosecution of felonies on indictment or information.) On the other hand s 901.02, F.S., states:
 A warrant may be issued for the arrest of the person complained against if the magistrate, from the examination of the complainant and other witnesses, reasonably believes that the person complained against has committed an offense within his jurisdiction.
At the same time, Fla.R.Cr.P. 3.120, similarly provides that a committing magistrate may issue a warrant or a summons "when the complaint states facts which show that such person violated a criminal law of this State . . . ."
Yet I have found no Florida statute or judicial decision defining the word "complaint" for the purposes of criminal law. Cf., State ex rel. Park v. H.T. Poindexter Sons Merchandise Co.,7 So.2d 452, 454 (Fla. 1941) which, in effect, holds that the word "complaint" is the technical name of a bill in chancery signifying the pleading by which a plaintiff sets out his cause of action in equity in the same sense that the word "declaration" is used to signify the plaintiff's pleading in a suit at law, and that a "distress affidavit" in a distress proceeding and a verified "statement of account" in a suit in a Justice of Peace Court serves the office of and is tantamount to a declaration in an action at law. The purpose of the complaint is well-defined in the civil law: it is to advise the court and the defendant of the nature of the cause of action asserted by the plaintiff.
Connolly v. Sebeco, Inc., 89 So.2d 482 (Fla. 1956). There seems to be little functional difference between this definition and that for an indictment, which the Florida Supreme Court once said was to fairly apprise the defendant of the charge. Drozewski v. State,84 So.2d 329 (Fla. 1956). The purpose of the information is the same, to describe the elements of the charge with sufficient detail so the defendant will have notice of the nature of the offense and be able to defend himself. Jones v. State,415 So.2d 852 (5 D.C.A.Fla., 1982). The courts appear routinely to refer to both the indictment and information as the accusation or the charge. See, e.g., State v. Hill, 208 So.2d 154 (3 D.C.A.Fla., 1968); Lawson v. State, 215 So.2d 790 (2 D.C.A.Fla., 1968).
The filing of a charge or a complaint generally is held to signal the start of criminal proceedings. In United States v. Patterson,150 U.S. 65, 68 (1893) the court said:
 A criminal charge, strictly speaking, exists only when a formal written complaint has been made against the accused and a prosecution initiated. . . . In the eyes of the law a person is charged with crime only when he is called upon in a legal proceeding to answer to such a charge. Mere investigation by prosecuting officers, or even the inquiry and consideration by examining magistrates of the propriety of initiating a prosecution, do not of themselves create a criminal charge. The hearing and deciding on a criminal charge is something which takes place only after the criminal charge has been legally made.
In a similar vein, the court in United States v. Scully,119 F. Supp. 225 (S.D.N.Y. 1954), aff'd, 225 F.2d 113 (2nd Cir. 1955), said that criminal proceedings against a particular individual cannot be said to be instituted until a formal charge is openly made against an accused, either by indictment presented or information filed in court, or, at least, by complaint before a magistrate. And see, 22 C.J.S. Criminal Law s 302(a), p. 792, "[t]he complaint or affidavit is the initial step in the prosecution . . ."; State v. Marshall, 105 N.E.2d 891, 893 (Mun.Ct.Ohio 1952), involving a misdemeanor prosecution for drunken driving, in which the court said, "[a]n affidavit charging an offense is the first step in bringing a misdemeanor before the court."
Thus, it would appear that when the sworn complaint is used to charge a person with the violation of a misdemeanor, it would be an accusatory document similar to an indictment or an information. Used in this way, the complaint would be an allegation, and the point at which formal action is instituted against an individual. In this sense the complaint would not be a sworn statement of a witness taken during an inquiry into the facts, but would represent the product of the inquiry, when suspicion had focused against a person.
It also appears that proceedings for the issuance of an arrest warrant are formal and accusatory in nature, rather than part of an inquiry. In Campbell v. County of Dade, 113 So.2d 708, 711 (3 D.C.A.Fla., 1959), a case involving the prosecution of a municipal ordinance, the court said, "[a]n arrest warrant is the legal process by which jurisdiction is obtained over the person in a criminal proceeding." In Cooper v. Lipscomb, 122 So. 5 (Fla. 1929), the court viewed the complaint upon which an arrest warrant was issued as the basis for a criminal charge. The defendant was arrested after a warrant was issued under Chs. 8319 and 8433, CGL 1927, which provided that a warrant shall be issued on complaint when made upon affidavit before a magistrate that an offense had been committed. "If, as here, it [the complaint] wholly fails to charge a criminal offense, the petitioner should be discharged," the court said. Cooper v. Lipscomb, supra, p. 6. See also, Roberts v. Dean, 187 So. 571 (Fla. 1939); Foster v. Perry, 70 So. 1007
(Fla. 1916). Therefore, a complaint for an arrest warrant would not be a sworn statement of a witness taken during a criminal investigation.
Under Florida law a formal probable cause finding before a magistrate following an arrest takes place in what is called a preliminary proceeding. See, State ex rel. Hardy v. Blount,261 So.2d 172 (Fla. 1972); Baugus v. State, 141 So.2d 264 (Fla. 1962); Part III, Fla.R.Cr.P.
The general rule is that:
 The preliminary proceedings are part, and generally the commencement, of a criminal proceeding; and their purpose and scope are in general to ascertain whether a crime charged has been committed and, if so, whether there is probable cause to believe that it was committed by the accused. Such proceedings, when set on foot by a private individual, are instituted by the giving of information to a prosecuting officer or by the filing of a complaint before an examining magistrate.
22 C.J.S. Criminal Law s 300, p. 790. The court in Gerstein v. Pugh, 420 U.S. 103 (1975), further noted that a probable cause finding was one of the initial steps in a criminal proceeding. This case involved a challenge by several Dade County, Florida, prisoners who sued in a class action contesting the fact that under then-existing Florida criminal rules they were not entitled to a probable cause hearing before a magistrate after being arrested and detained. The court held the prisoners were constitutionally entitled to such a nonadversary probable cause hearing under the Fourth Amendment after the filing of an information. The court noted such a hearing did not appear to be part of the investigative process:
 Because the standards are identical [for the determination of probable cause to issue an arrest warrant and to detain after a warrantless arrest], ordinarily there is no need for further investigation before the probable cause determination can be made. "Presumably, whomever the police arrest they must arrest on `probable cause.' It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on `probable cause.'" (e.s.)
Gerstein v. Pugh, supra, p. 120, note 21. Cf., Bennett v. U.S.,104 F.2d 209 (D.C.App. 1939).
Thus, it would appear that a probable cause hearing after arrest as provided for by Fla.R.Cr.P. 3.131 is more a part of the prosecution of an individual than the informal investigation
of a crime. By that point, suspicion has focused on a particular person to the extent that he has been arrested, jailed and then brought before a magistrate to determine independently of the police or the state attorney whether reasonable cause exists to detain him. Formal action has begun, and the parties and issues in the controversy have been defined.
From an examination of the document labeled "Summary of Offense and Probable Cause Affidavit," it appears that the purpose of this form is to set out for the magistrate the essential details of the offense and to allege the facts that exist showing the person in custody committed it. Cf., s 901.02, F.S.; Fla.R.Cr.P. 3.120; and Benefield v. State, 160 So.2d 706 (Fla. 1964), which held that a finding of probable cause to justify arrest without warrant required a showing the officer had information that warranted a man of reasonable caution to hold a belief that a crime had been committed. See also, Sheff v. State, 301 So.2d 13 (1 D.C.A.Fla., 1974); Betancourt v. State, 224 So.2d 378 (3 D.C.A.Fla., 1969); 6A C.J.S. Arrest s 22. In my opinion this document is not a sworn statement of a witness taken during a criminal investigation, but a summary of facts and charges.
Therefore, it appears that neither of these two documents, the complaint and the probable cause affidavit, amount to statements of witnesses taken in the course of a criminal inquiry or investigation. They do not appear to be intended to gather or preserve information, but rather appear to be accusatory documents specifically designed to be used for purposes of prosecution in taking formal action against an individual. While law enforcement officers are empowered to issue notices to appear or written orders to appear in a designated court that serve as complaints or summons in misdemeanor violations (see, Fla.R.Cr.P. 3.125), they are not generally empowered to embark upon criminal prosecutions, to execute and file accusatory documents, or to execute required jurats on accusatory or charging documents, in judicial proceedings or criminal prosecutions. Cf., s 34.13(3), F.S., which authorizes the state attorney to sign affidavits before the county court in misdemeanor prosecutions, and authorizes the county court judge to issue a warrant upon such affidavits.
The power to administer oaths under Ch. 83-147 extends only to sworn statements of witnesses taken during the law enforcement officer's informal gathering, authentication and preservation of information during an inquiry into the facts. Nothing in this opinion should be taken to imply that a law enforcement officer cannot take a sworn statement of a witness during a criminal investigation that later will be used by the state attorney to establish probable cause or to form an addendum to a criminal complaint. The fact the officer is empowered to take sworn statements only during investigations does not limit the state attorney's discretion concerning this subsequent use. However, an officer is not empowered to take the sworn statement of another officer or witness for the sole intended purpose of using that document to establish probable cause or to serve as a complaint for direct submission to a magistrate or a court, because such a statement would not be taken during a criminal investigation. The statute does not extend such power to the administration of oaths to witnesses in connection with and as a part of a criminal proceeding or prosecution before a court or a magistrate or the execution of required jurats on accusatory or charging documents.
Therefore, it is my opinion that law enforcement officers as defined by s 943.10, F.S., are not empowered by Ch. 83-147, Laws of Florida, to administer oaths to persons signing complaints and affidavits in connection with and as the initial step in or part of a criminal proceeding or prosecution for a misdemeanor or felony or for the issuance of an arrest warrant or to execute the required jurat on accusatory or charging documents or instruments.
Sincerely,
Jim Smith, Attorney General
Prepared by: Jason Vail, Assistant Attorney General